### THE STATE, DEFENDANT IN ERROR, v. FRANCISCO ABBATTO, PLAINTIFF IN ERROR.

Argued March 6, 1900—Decided March 23, 1900.

On the trial of an indictment for murder—*Held*, not to be error to permit
the state, for the purpose of showing motive, to prove that the prisoner
and the wife of the deceased occupied the same room together for two
successive nights almost immediately after the murder; nor to receive
in evidence a confession which was neither extorted by threats, nor
obtained by any direct or implied promise; nor to permit the state to
contradict portions of the statement contained in the prisoner's con-
fession. *Held, further*, that on the evidence which had been adduced
at the trial, a request that the jury be instructed that they could not
convict the prisoner of murder either in the first or second degree,
was properly refused.

On error to the Camden Oyer and Terminer.

For the plaintiff in error, *John J. Crandall.*

For the state, *Frank T. Lloyd*, prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, J.    This writ of error brings up the conviction
of the defendant, Francisco Abbatto, of murder in the first
degree, in the killing of one Genaro De Feo.   Several reasons
are assigned for setting it aside; some of them based upon
rulings of the trial judge on questions relating to the admis-
sibility of evidence, the others relating to the refusal to charge
to the jury certain requests submitted on the part of the
defendant.

The first assignment of error is to the admission by the court, against the objection of defendant's counsel, of the following question, put by the prosecuting attorney to the wife of De Feo, the murdered man, she being the state's witness : " Did you [referring to witness and the prisoner at the bar] occupy the same room in New York."

The contention of the state on the trial was that the prisoner had willfully, deliberately and with premeditation taken the life of De Feo, being moved to do so by desire to obtain possession of the latter's wife, and also of certain moneys which he carried about on his person. In support of its contention that illicit love for the murdered man's wife was one of the causes which moved Abbatto to kill him, the state had offered evidence tending to prove, among other things, that, shortly before the homicide, he had asked her to leave her husband ; that, on the morning following it, the prisoner and the witness, with her little child, had left their home near Hammonton (where the prisoner had been a boarder in De Feo's family) for New York, stopping over night in Philadelphia, where they occupied different rooms, and then going on to New York, where they remained two days, returning from thence to Hammonton. The ground upon which counsel contends that the question objected to was not competent is that the state had not, before putting the question, shown that the trip to Philadelphia, and afterwards to New York, was taken on the motion, or at the solicitation or request, of the defendant; the argument being that the testimony theretofore submitted would not fairly justify the conclusion that the journey was at the instigation of the defendant rather than of the witness. Conceding this to be so, and assuming that the trip was planned solely by the witness, it seems to us manifest that the question was properly admitted. The attempt of the state was to show the existence of illicit relations between these two people. That proof of such relations was competent for the purpose of showing motive is not, and cannot be, successfully denied. If these parties occupied the same bedroom for two nights in succession, that fact, in connection

with those already adverted to, would equally tend to the conclusion that meretricious relations existed between them, whether the journey to New York took place at the solicitation of the prisoner or of the witness.

The second and third assignments of error relate to the admission in evidence of a confession of the defendant.

A few days after his arrest, on the charge of having murdered De 'Feo, he was taken to the office of the prosecuting attorney, and there subjected to an examination upon matters relating to the alleged crime. As he was an Italian, unable to speak or thoroughly understand the English language, and, as the prosecuting attorney was ignorant of Italian, there was present one Amodei, to act as an interpreter between them. The questions and answers were translated by the interpreter, and the examination was taken down in shorthand by a stenographer, written out in English, and then read over to the prisoner and signed by him. Before offering the confession in evidence, counsel for the state put Amodei upon the witness-stand, and, for the purpose of proving that the questions and answers had been accurately translated, asked this question : " Was the statement made by Mr. Jenkins [the prosecuting attorney] to you as interpreter, repeated by you as 'interpreter." This question was objected to ; the reason for such objection being that the paper, —*i. e., the transcript of the stenographer's notes*—must speak for itself. Except for the grave importance of the case, this assignment is so frivolous as not to merit mention, much less consideration. It was not only competent, but necessary, to prove by the oath of the interpreter, on the witness-stand, that he had truly interpreted between the prosecutor and the prisoner, in order to justify the subsequent admission of the stenographer's transcript of what was said by them at the examination that he reported ; and this was so without regard to whether the stenographer's notes did or did not contain a statement that the witness had so interpreted.

Error is also assigned to the admission of the confession itself, against the objection of the prisoner, the ground of

objection being that the confession was not voluntary. It appears that before anything was said by Abbatto he was informed by the interpreter, at the instance of the prosecuting attorney, that he was charged with the murder of De Feo, and that, knowing he was so charged, he need not say anything without he desired, but that if he wanted to tell anything about the case, the prosecuting attorney would like to know the truth of the matter. In reply the prisoner expressed his willingness to tell what he knew about the case; and his examination was then taken. No threat was made or violence used for the purpose of extorting any statement from the prisoner, nor was it induced by a promise of any kind, either direct or implied. This being so, the so-called confession (the prisoner did not admit by it that he had taken the life of De Feo) was a voluntary one, as defined by this court in the recent case of *Roesel* v. *State,* 33 *Vroom* 216, and was properly admitted in evidence.

The next assignment of error relates to the admission of testimony offered by the prosecution for the purpose of contradicting a statement made by the prisoner in his confession. There was no error in admitting this evidence. The rule is elementary that if, after the whole statement of the prisoner is given in evidence, the prosecutor can contradict any part of it, he is at liberty to do so; and then the whole testimony is to be left to the jury for their consideration, precisely as in other cases where one part of the evidence is contradictory of another. 1 *Greenl. Evid.,* § 218; *Rex* v. *Jones,* 2 *Car. & P.* 629.

The last two assignments of error are to the refusal of the trial judge to instruct the jury in accordance with the following requests, viz.: First, that the state had failed to make proof before the court and jury that the killing of the deceased (De Feo) was the result of any willfulness, deliberation and premeditation on the part of the defendant, and that the jury were unauthorized to find the accused guilty of murder in the first degree; second, that the state had not produced before the jury evidence tending to establish that the accused

killed the deceased (De Feo) in the commission, or the at-- tempted commission, of any specific unlawful act against the peace of this state of which the probable consequence was bloodshed, and that the jury were not authorized to find the accused guilty of murder in the second degree.

As has already been stated, evidence had been offered on the part of the state tending to show that Abbatto was in love with the wife of De Feo, and that within two weeks before the homicide he had asked her to leave her husband. It had been further shown that on the afternoon of the day on which deceased was killed his wife spent an hour in company with Abatto, in the woods near the house where they lived; that immediately after their separation Abbatto went to a livery stable and arranged for the hire of a horse and wagon; that about eight o'clock that same evening the prisoner and the deceased took the horse and wagon and drove off in the direction of the place where the deceased's body was after- wards found; that later they were seen not far from that place; that the prisoner did not return with the wagon until the next day and that he returned alone; that portions of the wagon were stained with blood and that bits of hair were found upon some parts of it. It had also been shown, as hereinbefore recited, that on the day of his return Abbatto went with the wife and little child of the deceased to Phila- delphia, where they remained one night, and afterwards to New York, where they remained over the two following nights, occupying the same bedroom at the latter place. In addition, it had been testified to that several days later the body of De Feo was found hidden in a thicket, about one hundred yards back from the public road, with the head severed from the body, the head being subsequently found several hundred yards away; that large quantities of blood were found in the road opposite to where the body was dis- covered, and that there were upon the ground indications that the body had been dragged from the place where this blood was to the thicket where the body was concealed. There had, moreover, been produced evidence tending to show

that the deceased had upon his person, on the day of his death, money to the extent of $70 or more, which he intended to send to Italy, and that this was known to Abbatto; that at the time the latter hired the wagon he had, by his own admission, only $8 or $9, but that on the next day, when he went with the deceased's wife and child to Philadelphia, he had quite a roll of bills in his possession; and that, although the deceased had this considerable sum of money upon his person on the day of the homicide, as has been already stated, when his body was afterwards discovered no money was found upon it. No attempt was made on behalf of the prisoner to discredit this testimony, or to do away with the natural inferences arising from it; no proof being offered upon the part of the defence when the state rested, counsel stating to the court that he had " decided to take the serious responsibility of not producing any testimony at all."

If the deceased (De Feo) came to his death at the hands of Abbatto, as the jury has found, it seems almost impossible, in the face of the facts above cited, to resist the conclusion that his death was the result of the willful, deliberate and premeditated act of the latter, and that the crime was murder in the first degree. Certainly it cannot be said as a matter of law that these facts will not support a conviction of that offence. That being so, they will equally support a conviction of felonious homicide of any lesser degree. The requests to charge were, therefore, properly refused by the trial court.

We find no error in the record, and are of the opinion that the judgment below should, in all things, be affirmed.

*For affirmance*— DEPUE (CHIEF JUSTICE), VAN SYCKEL, DIXON, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES. 11.

*For reversal*—None.