## McCandless v. Commonwealth.

(Decided May 19, 1916.)

### Appeal from Livingston Circuit Court.

1. Sheriffs and Constables—Summoning Jurors—Setting Aside Sheriff.—The unsupported affidavit of a defendant that it is his

belief and information that the sheriff is antagonistic to him, and will not impartially summon petit jurors to try him is not sufficient to require the court to set aside the sheriff and to designate another officer or person to summon a petit jury.

2. Criminal Law—Demonstrative Evidence—Introduction of Clothing —Competency.—The clothing worn by a person slain, at the time he is found dead or when he receives his mortal wound, is competent as evidence to shed light on the manner of his death, when it is proven to the satisfaction of the court that the clothing is in the same condition as when found upon the deceased person or when he receives his mortal wound.

3. Criminal Law—Photographs—Introduction of as Evidence.—A photograph of the wounds upon the body of a person who has been killed is competent to go to the jury as evidence of the wounds and their location, when it has been proven to the satisfaction of the court by a witness or witnesses, who have seen the wounds, that the photograph is an accurate representation of the wounds.

4. Criminal Law—Photographs—Introduction of in Evidence.—Where a photograph has been admitted as evidence in a criminal trial, it is within the sound discretion of the trial judge to permit the jury to take the photograph to its room when it retires to consider of its verdict, and his discretion will not be interfered with upon appeal, unless it has been abused.

5. Criminal Law—Evidence—Res Gestae.—A statement made by one having committed a homicide immediately after having fired the fatal shot and before leaving the place or having made any other declaration, and to one who inquired why he had done so, to the effect, that he was compelled to do so, that the deceased was attempting to shoot him, is a part of the res gestae.

6. Criminal Law—Evidence—Admissions.—When a portion of what one has said, who is accused of a crime, with reference to the crime, has been proven against him upon a trial as an admission of his guilt, he is entitled to prove all that was said by him, with reference to the matter, in the same conversation and at the same time and place.

7. Homicide—Evidence.—Where a husband slays one who is accused of having made an assault upon or improper proposals to his wife, it is not admissible for the husband, upon the trial for the homicide, to state what his wife told him about the conduct of the deceased, where the husband claims that the killing was done in his necessary self defense, and not on account of the alleged outrage upon his wife.

8. Homicide—Evidence.—It is competent for a husband, who has slain one who has assaulted his wife, to give in evidence what his wife told him with reference to the assault, if his defense is that the slaying was done as the result of insanity on account of the outrage, or for the purpose of reducing the crime to voluntary manslaughter, if the killing is done before time sufficient has elapsed for the passions of the husband to cool.

9. Criminal Law—Assault—Evidence.—The words used by one when making an assault may be proven the same as the assault may be proven.

10. Homicide—Threats—Evidence.—In a trial of one for a felonious homicide, upon a plea of self defense, the accused may prove the threats of violence made against him by the deceased, although they were indirectly made and by innuendo, if all the circumstances show that they referred to the accused.

11. Homicide—Threats—Evidence.—In a trial for a felonious homicide where the issue is whether the accused or deceased began the encounter, the threats made by deceased against accused may be proven, as tending to show which one of them began the fight, although the threats were never communicated to the accused.

12. Homicide—Self Defense—Character Evidence.—Where one is upon trial for felonious homicide, and his plea is that of self defense, it is not admissible for him to prove his good moral character, as substantive evidence of his innocence, as his character for peace and quietude is the only element of his character in issue.

C. C. GRASSHAM, BERRY & GRASSHAM and WILSON & WELLS for appellant.

M. M. LOGAN, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellant, Claude McCandless, shot and instantly killed Barney Trimble, in Livingston county. For this action he was indicted for the crime of wilful murder and upon a trial was found guilty of voluntary manslaughter by the jury and so adjudged by the court. His motion to grant him a new trial being denied, he has appealed to this court and seeks a reversal of the judgment for many alleged errors, all of which we do not deem it necessary to consider. A statement of the main facts relating to the homicide, and the contentions of the parties in regard thereto will be necessary for the purpose of determining the propriety of the decisions of the court which are complained of.

The appellant was a tenant of the deceased for the year 1912, upon a farm which was under the control of the deceased. In the month of August the appellant received information to the effect that deceased had sought to have sexual intercourse with appellant's wife, and in his attempt to effect this purpose had assaulted her. Appellant sought out the deceased and their meeting resulted in a fight between them, which ended as appellant claims in deceased drawing a pistol upon and

threatening him. In September following, the grand jury returned an indictment against the deceased, which accused him of the crime of unlawfully detaining the wife of appellant against her will with the intent of having carnal knowledge of her, and among others whose names were endorsed upon the indictment as witnesses for the Commonwealth, was the name of appellant. About the same time the wife of appellant filed a suit against the deceased, in which she complained of the alleged assault and sought a recovery against him in the sum of $25,000.00 in damages therefor. On the day of the encounter between appellant and deceased, above mentioned, they were at a sale held by one Bishop, at which place, deceased, who appeared to be in a very angry mood, requested William Hughes to tell the appellant to come out into a woods where deceased then was, and said that he wanted to have it out with him. Nothing further seems to have occurred between appellant and deceased until in the following January or February, when appellant, in company with Judd Roberts, Ollie Meyers and James Castilla, were standing upon the bank of the Ohio river. A gasoline propelled boat approached upon the river, when Castilla called the boat to the shore for the purpose of procuring it to carry hogs to the other side of the river. The deceased was a passenger upon the boat, and when it approached the shore, he took a pistol from his pocket upon his left side and placed it with his hand in his coat pocket upon his right side, where he held it and at the same time fixed his gaze upon appellant and so continued to gaze upon him until the boat went away from the bank, where appellant was left standing. Neither appellant nor deceased said anything. A few days after this occurrence, the same boat was proceeding down the river with appellant thereon as a passenger. He claims that his purpose was to visit the home of his mother, which was three or four miles below. The waters in the river were very high and had overflowed the lowlands near to it. When the boat had arrived opposite the farm of deceased, he was upon the bank of the river and called the boat to shore, and requested it to remove several men, who were in a corn pen, which was surrounded with water. The boat touched the bank upon the lands of deceased, and a short distance from a public road, which led away from the river and by the

dwelling house of deceased and in the direction of the home of appellant's mother. The owner of the boat informed appellant that he could carry him no further, when he got off the boat and went toward the public road. He was armed with a shot gun. Deceased said to him that he did not want him to be shooting upon his premises, and asked him in a very determined manner if he understood that. The appellant made no answer, but went onto the public road and on past the dwelling of deceased, but when he got beyond the dwelling of deceased, he found that the highway was obstructed by the waters from the river and that he could go no further along the road. Deceased, by this time, had gone into his house and came out with a pistol and threatened appellant if he attempted to go through his fields. The appellant returned to the river, with deceased not far in his rear, with his pistol in his hand. Appellant claims that deceased cursed and threatened him. Appellant then requested the owner of the boat to carry him away, and got upon the boat. After the boat left, deceased, speaking of appellant, said, in substance that if he ever caught that "d—d s—n b—h" upon his premises that he was going to kill him. Wm. Boaz, Will McAfee, Holland Capron, Gus Capron and Odie Burns were present upon this occasion.

Shortly thereafter appellant and his wife were visiting at the home of Perry Davidson, whose dwelling is immediately beside the road which leads from the home of deceased to a farm which was under the control of deceased and occupied by his tenant, John Bradshaw. Deceased came from his home to the latter place by the dwelling of Davidson and hitched his horse in a lane in full view of Davidson's home, and had an interview with Bradshaw, who told him that appellant was at Davidson's home. Deceased left Bradshaw, mounted his horse and rode in the direction of his home. Just as he was opposite the house of Davidson, which was twenty or thirty feet from the road, appellant came out of the house and upon the porch in front with his shot gun, and immediately raised his gun and discharged it at deceased. The load took effect in his right shoulder and arm and his body contiguous thereto and caused his instant death. One bullet entered his forehead, near the center, one near the center of his upper lip, and one in the arm-pit of his right arm. There was only one eye-

witness to the shooting and he was about two hundred yards away. After his death, deceased was found to have a pistol in his coat pocket upon his right side, but it was underneath a handkerchief and some strings in the pocket. In passing Davidson's house, as he was traveling, it would be upon decedent's right hand.

The theory of the prosecution is that appellant recognized the horse of decedent, and lay in wait for him in the house until he approached, and then stepped out upon the porch and shot and killed him, and that decedent was either not aware of his presence or at least was not making any threatening demonstrations nor attempting to do anything to appellant at the time he was shot.

The appellant claims that decedent had assaulted him with a pistol upon three prior occasions; had threatened to do him violence, and that some of the threats had been communicated to him prior to the shooting; that on the occasion when he killed decedent, he was in the act of leaving Davidson's home to carry a message from one Hibbs, which he had promised to deliver to a neighbor, and had his gun with him for the purpose of hunting, and when he stepped out upon the porch, the decedent was directly in front of him in the road and at once attempted to draw his pistol, with a threatening and menacing manner and said to him: "You have that old gun again, you son of a b—h," and that fearing for his life and for the purpose of saving himself from threatened death or great bodily harm, he immediately shot and killed Trimble.

The grounds relied upon for a reversal of the judgment are:

(1) The court erred to the prejudice of the appellant's substantial rights in overruling his motion to have a special officer appointed to summon the veniremen from whom to select a jury, instead of the sheriff or his deputies.

(2) The court erred in admitting incompetent evidence, over his objection, to be heard and considered by the jury.

(3) The court erred in excluding from the consideration of the jury competent evidence offered by him.

(4) The court erred in permitting the jury, after the case had been submitted to them and while it was

considering its verdict, to take with it a photograph of the body of deceased, which was taken after his death, and admitted in the evidence.

(5) The court erred in the instructions it gave to the jury, and failed to properly instruct the jury.

The grounds will be considered in their order.

(a) After the members of the regular panel of jurors, which had been summoned and were in attendance for the term, had been exhausted in the effort to secure a jury, the appellant moved the court to draw the names of jurors necessary to constitute the panel from the jury wheel, but his motion was overruled. He then moved the court to appoint a special officer to summon persons qualified for jury service from the body of the county necessary to complete the jury, instead of the sheriff and his deputies, and in support of this motion made and filed his affidavit. No complaint is made of the ruling of the court upon the first motion, but the decision of the court upon the latter motion is complained of as prejudicial error. The affidavit stated that the sheriff was a warm personal friend of the deceased; that it was appellants information and belief that the sheriff was a partisan of the prosecution, and that he had information that the sheriff had expressed himself to the effect that the appellant should be convicted and was guilty as charged; that he did not believe that the sheriff would select fair and impartial jurors, and that he did not believe that either of the deputy sheriffs would act impartially in summoning persons for jury service.

The court properly overruled the motion to appoint a special officer for the purpose of summoning citizens to compose the jury. The affidavit was unsupported by any other proof, and the appellant does not state any fact or circumstance which would show his suspicions in regard to the sheriff were in any wise correct or founded in anything real. Section 193, of the Criminal Code, provides that the court may for sufficient cause, designate some other officer or person to summon petit jurors than the sheriff. In Forman v. Commonwealth, 86 Ky. 605, the defendant objected to the assistant of the person designated in place of the sheriff to summon the jurors, because of supposed bias of such assistant against him, and prepared and filed his affidavit to that

effect, but the court overruled the objection and upon appeal it was held not to be error, the court saying:

"And certainly the unsupported affidavit of the defendant should not be regarded by this court sufficient evidence in that respect upon the part of the lower court; for if by the mere objection of the defendant the appointment or designation of a person deemed by the court fit may be set aside, the summoning of the jury would be indefinitely postponed."

It seems that the same rule would govern the attempt to set aside the sheriff and substitute another in his place for the purpose of summoning jurors. The evidence necessary to support the motion to set aside the sheriff and to designate another in his stead to summon persons for jury service ought to be competent evidence of acts, declarations, bias, or such circumstances as would show that the sheriff would not perform his duty impartially.

(b) On the trial, the prosecution offered in evidence the hat and clothing which deceased was wearing at the time he was killed. The appellant objected to its introduction and his objection being overruled, he now insists that the ruling of the court was error. We cannot concur in his view. It is always proper to introduce as evidence and exhibit to the jury clothing found on a deceased person, at the time of his death, to shed any light which it may upon the manner and cause of his death. Before clothing, however, should be admitted in evidence, it should be proven that it was the clothing worn by deceased at the time of his death or when he received his mortal wound, and that the condition of it is the same as when he was found dead or when the mortal wound or wounds were received. Levy v. State, 28 Texas App. 203; Hart v. State, 15 Texas App. 202; Davidson v. State, 135 Ind. 254. The evidence proved the hat and clothing as being that which was found upon the body of deceased just after he was killed, and that the condition of it was unchanged.

(c) A photograph, which showed the wounds upon the body of deceased, except the one in his right arm pit and the ones in his forehead and lip, was offered and received in evidence over the objection of the accused. This he complains of as error. The photograph is not with the record and hence it cannot be inspected. A photograph proven to be a true representation of the

things which it purports to represent is competent evidence of anything, which it is competent and relevant for a witness to give a verbal description of. Before a photograph can be received in evidence, it must be proven to the satisfaction of the court by a witness or witnesses, who saw the wounds purporting to be photographed, that the photograph is an accurate picture of the wounds. L. & N. R. R. R. Co. v. Brown, 127 Ky. 732; 17 Cyc. 417; Wigmore on Evidence 790-7; Ligon v. Allen, 157 Ky. 101; Roberson, vol. 1, sec. 239. It was proven, in the case at bar, that it accurately represented the wounds, except the ones above mentioned. It was, also, abundantly proven by the witnesses, one of whom was by the physician who examined the body after death, that the wounds on the forehead, lip and in the arm pit existed and that the one in the head was the mortal wound. The court was not in error in admitting the photograph in evidence.

(c) The appellant, also, complains that the court permitted the jury to take the photograph with it to its room when it was considering the verdict. Section 248, Criminal Code, provides:

"Upon retiring for deliberation, the jury may take with them all the papers and other things which have been received in evidence in the cause."

In Taylor v. Commonwealth, 92 S. W. 292, it was held that it was proper to permit the jury to take to its room when considering its verdict any papers which had been received in evidence in the cause. It seems that it is a matter within the discretion of the court to permit such things as have been received in evidence to be taken by the jury to its room when it retires for consultation, and we fail to see how the permission for the taking of the photograph by the jury to its room was an abuse of discretion.

(d) Mrs. Perry Davidson, directly in front and within a few feet of whose dwelling the homicide was committed, was introduced as a witness by the Commonwealth's Attorney, and by her it was proven that immediately after the shot was fired, which caused the death of deceased, that as the accused came back into her house, he said that he had shot Barney Trimble. After the evidence in chief for the prosecution had closed, the appellant, before offering any evidence for the defense, recalled Mrs. Davidson and asked her to

state what the accused said to her about shooting Trimble when he returned into her house. Objection was made and the court sustained the objection and refused to permit her to answer, when appellant avowed that she would state that when he said to her that he had shot Barney Trimble, she asked him why he did so and he answered that ''he was trying to draw a gun on me.'' While introducing the evidence for the appellant, Mrs. Perry Davidson was again recalled and asked how soon it was after the gun was fired, which killed Trimble, that she reached the place where appellant was. The court refused to permit her to answer, and it was avowed that she would state that she reached where the appellant was immediately. She was then asked what statement, if any, the appellant made to her there and then concerning the killing of deceased. The court, upon objection, refused to permit her to answer, when the avowal was made that she would state that appellant, said that he had shot Barney Trimble, when she asked him why he had done so, and he answered that ''he had to, that Trimble was trying to draw a gun on him.'' This is evidently the conversation to which the witness had reference in her testimony, in chief, when she testified that accused had said that he killed Trimble. The exclusion of the remainder of the conversation from the jury was prejudicial error for two reasons. The accused claims that he did the shooting because he believed it to be necessary to save himself from imminent danger of death or great bodily harm at the hands of the deceased. The only eye-witness was sitting down and two hundred yards away. The declaration that he was compelled to shoot because the deceased was attempting to draw a deadly weapon upon him was made immediately after the shooting and before sufficient time had elapsed to enable accused to formulate a. narrative to help him in his claim of self defense; it grew out of the litigated act and is an illustration of it and was the first declaration made by him. Galloway v. Commonwealth, 4 R. 720; Galloway v. Commonwealth, 5 R. 213; Ross v. Commonwealth, 21 R. 1344. The other reason why it was error to exclude the statement of appellant that deceased was attempting to shoot him is, that it is a part of the conversation which the prosecution proved as an admission of the appellant. It would be manifestly unfair to appellant to pick out the incriminating

words in the conversation and put them in evidence
against him and exclude the remainder of the conversa-
tion in which he explains the incriminating statement.
Cornelius v. Commonwealth, 15 B. M. 539; Cable v.
Commonwealth, 14 R. 253; Roberson, vol. 2, section 955.

(e)  The appellant insists that the court ought to
have permitted him to have given in evidence what his
wife had informed him as to the deceased having insulted
and assaulted her, and to have, also, stated that that
was the cause of all the trouble between him and the
deceased.  In this we cannot concur.  The appellant
rests his defense to the indictment upon the claim that
he shot the deceased in his apparently necessary self
defense.  Evidence as to an assault upon the wife of
appellant by deceased or an improper proposal by him
to her could only be competent in two states of case.
If the contention was made that a knowledge of a wrong
done to his wife by deceased had dethroned appellant's
reason and that he was insane at the time of the shoot-
ing, it would be competent to make proof of the assault,
and for appellant to state the facts, of which his wife
had informed him.  If appellant had slain the deceased
after having received the information that his wife had
been assaulted by deceased, and before his passions,
aroused by the information, had sufficient time in which
to cool and before he had opportunity to deliberate upon
a trial for such crime, it would have been competent for
him to have stated the information that he had received
from his wife as evidence conducing to show that in
slaying deceased he had been impelled by provocation
reasonably sufficient to arouse his passion beyond the
power of control, and competent as bearing upon
whether his crime was wilful murder or voluntary man-
slaughter.  Shipp v. Commonwealth, 124 Ky. 643; Shep-
herd v. Commonwealth, 119 Ky. 931.  Appellant, how-
ever, does not claim that he slew deceased upon an in-
sane impulse, or that he shot him on account of the al-
leged wrong to his wife, but that he shot him because
he was threatening him with death.  It is a well-known
rule of the common law that the provocation must be
recent, and the act committed while laboring under the
passion and excitement produced by the provocation,
before the provocation will reduce a homicide from
murder to voluntary manslaughter.  If the passion had
cooled before the homicide, or if there had been suffi-

cient time for them to cool after the provocation and before the homicide, the act must be attributed to malice and not passion. 21 Cyc. 758; Stewart v. State, 66 Ga. 90. In addition to the fact that appellant does not claim that he shot deceased because of the alleged outrage upon his wife, it could not be pretended that after five or six months had expired, and appellant and decedent had met upon several occasions without any assault upon him having been made by appellant, that he slew the decedent on account of any provocation caused by the alleged outrage upon his wife. Hence, it would not be competent for appellant to state any information that he had received from his wife as to the assault upon her, as it would not have any bearing upon the issues in this case, except to the extent as will be hereafter stated. The appellant, however, should have been permitted to state that he and deceased became unfriendly toward each other and the date of the break in their friendly relations. As explanatory of the conduct of the parties, and of their intent and motives, the appellant should have been permitted to state that he had received information that deceased had assaulted or insulted his wife, as the case may have been, as the cause of the first trouble between him and deceased, at which time he accuses deceased of having assaulted him with a pistol. The details of the information, however, are immaterial and should be excluded.

(f) It is avowed that appellant would state that previous to the homicide that Jesse McCandless informed him that the deceased had threatened to kill him. He should have been permitted to so state.

(g) The appellant offered to explain why he got off the boat and undertook to go to his mother's house by the road, which led by the house of deceased, on the occasion when deceased followed him with a drawn pistol, by stating that the owner of the boat said that he could not or would not carry him further. The court refused to permit him to do so. He should have been permitted to do so in explanation of why he got off the boat upon the premises of the deceased.

(h) The testimony, which was given by appellant and others to the effect that when he got off the boat the deceased said to him, "I do not want you to do any shooting on my land," "Do you understand that?" should not have been excluded. While the deceased had

the right to forbid the appellant to shoot upon his land, the appellant was not offering to do so, and the remarks of deceased, under the circumstances, and connected with what transpired immediately afterward, were indicative of his animosity and aggressiveness toward appellant.

(i) The appellant should not have been denied the right to state from whom he was bearing a message to Jas. Castilla, at the time he stepped out of Davidson's house as he claims, and encountered the deceased.

(j) It is avowed that Gus Capron, a witness for appellant, would state that on the occasion when deceased was following appellant with a pistol, that deceased said to appellant, "I will kill you, you G—d d—n son of a b—h, if you make a move." This evidence should not have been excluded.

(k) William Boaz, the man who was the owner of the boat upon which appellant was riding when he undertook to go by the home of deceased to his mother's home, stated as the reason for appellant getting off the boat, that he told appellant that he was not going any farther with the boat, and appellant inquired of the witness how to go through the country to his mother's. The court excluded this from the consideration of the jury, which was error, as it was an explanation of why appellant got off the boat near the house of deceased. The court refused to allow this witness to state whether the deceased had a pistol in his hand upon this occasion when talking to appellant. This was likewise an error.

(l) The witness, James Castilla, stated that the deceased, talking to him in reference to appellant, said, "if this thing ain't stopped it is going to cause one of us to die" meaning deceased and appellant. It was avowed that the witness would state that he communicated this threat to appellant a few days before the tragedy. The court erroneously excluded the offered testimony.

(m) Vernon Foster was a witness for appellant, and after being asked a question in eight different forms, in regard to statements made to him by deceased in reference to appellant, to all of which objections were sustained by the court, was finally permitted to answer, that deceased said to him, "I have been a friend to you and you are a friend to Claud McCandless, * * * and to save McCandless' life or his, I had better swear these

things." He was then asked what things? and answered that he did not say what. The court thereupon erroneously excluded all the evidence of the witness from the consideration of the jury.

(n)  Will Hughes was called as a witness for appellant, and after stating that he was at Bishop's sale, which occurred a short time after appellant and deceased had their first trouble, and was in a woods near the crowd, in which appellant was, asked, if deceased sent any word to appellant by him. He answered that he did. He was then asked to state what the message was. The court erroneously sustained an objection to his making an answer. It was avowed, that if permitted to answer that he would state that deceased sent a message by him to appellant to come down into the woods, that he wanted to have it out with him. Deceased was angry and gesticulating. This evidence was competent and should have been admitted.

(nn)  If all the circumstances show to whom the threats refer, they are not irrelevant and inadmissible, although they are indirectly made and by *innuendo*. Sparks v. Commonwealth, 89 Ky. 644; Young v. Commonwealth, 19 R. 927. In the trial of one charged with a felonious homicide, and the issue is whether the deceased or accused began the rencounter, threats made by the deceased are admissible as evidence, as tending to show which one of them began the fight, although the threats were never communicated to the deceased. Miller v. Commonwealth, 89 Ky. 653; Hart v. Commonwealth, 85 Ky. 77; Young v. Commonwealth, *supra*.

Witnesses called to prove threats ought to be asked to state the words made use of by the party making the threat, and should be permitted to state all the party said in the conversation connected with the threat, so that the exact meaning and intent may be made clear.

(o)  The appellant's contention, that he should have been permitted to prove by various witnesses his good moral character, is not meritorious. The witnesses were permitted to testify as to his character for peace and quietude. This was the only element of his character which was in question or the proof of which would shed any light upon the issues of the case. The court properly sustained objections to proof of his moral character.

(p)  The appellant, through the clerk of the circuit court, as a witness, offered as evidence in his behalf the indictment against the deceased for unlawfully detaining against her will, the wife of appellant, and, also, the petition in the suit which the wife of appellant had instituted against deceased, growing out of his alleged assault upon her.  The introduction of these documents or any proof in regard to them was objected to and the court sustained the objection.  The appellant, as heretofore stated, was a witness against deceased upon the indictment and his name as such was endorsed upon it.  The defense of appellant, in the case at bar, is that deceased was at the time he shot him, attempting to draw a pistol to shoot him.  The absence of eye-witnesses, who are able to testify to all the actions of the parties at the time of the homicide, makes any evidence which would tend to prove a motive upon the part of deceased to assault or shoot the appellant, competent for that purpose.  In Martin v. Commonwealth, 93 Ky. 189, the accused was upon trial for killing one, Burk, and it was held to be admissible to prove, for the purpose of demonstrating the motives of the accused in shooting Burk, that an indictment was pending against him for robbery, upon which Burk was a witness against him.  After showing by the record or otherwise that deceased knew of the pendency of the indictment and the suit, we are of the opinion that the court was in error in sustaining the objection to them being introduced as evidence, as they were competent to show a motive for deceased in attempting to shoot appellant, if he did so, at the time of the homicide, and for assaulting appellant with a pistol upon the two occasions near the river bank, if he did so.  It would be improper to allow any proof of the facts upon which the indictment or petition is based.  They are only allowed to be introduced for the purpose of showing motive upon the part of deceased to attack appellant, if they do show such motive, and upon their introduction, the jury should be told the purpose for which they are allowed, and its consideration of them as evidence confined to that purpose.

(q)  The instructions given the jury are criticised by counsel for appellant, but the case would not be reversed upon that account, as taken as a whole they substantially state the law of the case.  Upon another trial, however, there should be inserted in the instruc-

tion which defines the crime of wilful murder, following the words "feloniously," and between it and the word "kill," the following words: "and not in his necessary or apparently necessary self defense, as set out in instruction No. 3." In the instruction which defines voluntary manslaughter, and following the word "aforethought," and between it and the word "kill," should be inserted the words, "and not in his necessary or apparently necessary self defense, as set out in instruction No. 3, did feloniously and wilfully."

The court should, also, upon another trial give the instruction provided for by section 239 of the Criminal Code, which directs the jury to find the accused guilty of the lesser offense, if entertaining a reasonable doubt of which offense he is proven to be guilty.

For errors, enumerated, in excluding from the consideration of the jury, competent and material evidence offered by appellant, the judgment is reversed and cause remanded for proceedings, consistent with this opinion.