## McCandless v. Commonwealth.

(Decided March 20, 1917.)

### Appeal from Livingston Circuit Court.

1.  Criminal Law—Evidence—Indictment.—For the purpose of show-
    ing the motive on the part of the deceased in attacking the
    accused, it was competent for the accused to offer evidence of an
    indictment returned against the deceased for assaulting the wife
    of the accused, on which indictment the accused was a witness;
    but it was not prejudicial error to refuse to permit the indictment

to be read when the clerk of the court disclosed in his evidence every material fact that it contained.

2. Criminal Law—Evidence—Contradiction of Witness.—Where a witness does not make any statement prejudicial to the accused, it is not error to refuse to permit the accused to contradict the witness in respect to his harmless evidence.

W. A. BERRY, C. C. GRASSHAM, C. H. WILSON and BERRY & GRASSHAM for appellant.

M. M. LOGAN, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is the second appeal of this case. In the former opinion, that may be found in 170 Ky. 301, the facts are fully set out and need not be repeated here. On the first trial, as appears from the opinion, McCandless offered as evidence in his behalf the indictment against the deceased for unlawfully detaining his (McCandless) wife against her will. The trial court on the first trial excluded this offered evidence and the court said that although it would be improper to allow any evidence of the facts upon which the indictment was based, it was yet competent for the purpose of showing a motive upon the part of the deceased to attack McCandless, if it did show such motive, and when admitted that the jury should be told the purpose for which it was allowed.

On the trial of the case from which this appeal is prosecuted it is urged as reversible error that the trial judge refused to permit the indictment against the deceased, Trimble, to be read as evidence before the jury.

The record shows the following state of facts: The circuit clerk of Livingston county where the indictment was found was offered as a witness by McCandless and was asked and answered the following questions without objection: "Q. I will ask you if you have among the records of said court an indictment returned against Mr. B. F. Trimble by the grand jury of Livingston county, charging him with unlawfully detaining Mrs. Claude McCandless against her will for the purpose of having carnal knowledge of her? A. Yes, sir. Q. I will ask you the date said indictment was returned. A. It was filed September 12, 1912. Q. I will ask you if the name of the defendant, C. A. McCandless, appears upon the back of said indictment as a witness against said Trimble in said charge? A. It does. Q. I will ask you to read said

indictment to the jury as evidence in this case." To this question the objection of the Commonwealth was sustained and the court refused to permit the indictment to be read.

It will thus be seen that the only ground upon which this assignment of error can rest is the failure of the court to allow the indictment to be read, because evidence was permitted to go to the jury advising them that such an indictment was found and apprising them of the nature of the accusation and of the fact that McCandless was a witness. The indictment itself merely charged in statutory form that Trimble had been guilty of the crime of unlawfully detaining Mrs. McCandless against her will with the intent to have carnal knowledge of her, and every material thing in the indictment went to the jury in the questions and answers we have quoted. It is plain, therefore, that the trial judge observed the substance of the ruling in the former opinion and equally plain that there is no prejudicial error in this assignment.

The next alleged error consists in the rejection by the trial court of some evidence proposed to be introduced by William Boaz when he was testifying as a witness on behalf of McCandless. A short extract from the former opinion will help to illustrate the reason why counsel for McCandless argue that the rejection of this evidence was prejudicial error. McCandless and the deceased, Trimble, were enemies, and each went about carrying firearms, presumably either for the purpose of attack or self-defense, and a few days before McCandless killed deceased he was riding down the river in a small gasoline boat operated by Boaz. When the boat arrived opposite the farm of deceased, who was standing on the bank of the river, he called the boat to shore and requested that several men on his premises be taken aboard. McCandless, a passenger on the little boat, intended to go further down the river, but when the boat was hailed by Trimble, Boaz told him he could carry him no further, and when the boat landed on the premises of Trimble, McCandless got off and went toward the public road armed with a shotgun. Trimble told him that he did not want him to be shooting upon his premises, to which direction McCandless made no answer, but continued to walk toward the public road, some little distance off. Finding that the public road was overflowed by water, he returned to the boat. While on his way to the boat, Trimble, who, in the meantime, had gone to his house and gotten a pistol,

threatened McCandless if he attempted to go through his field. McCandless, however, proceeded to the boat and after being taken aboard, continued on his way down the river.

On the second trial of the case, on the cross-examination of Boaz by the Commonwealth, he was asked and answered this question: "Q. After McCandless got back in the boat, did he state to you anything about killing Mr. Trimble? A. Seems as though he did." On his re-direct examination he was asked by counsel for McCandless these questions, and made these answers: "Q. You say McCandless said something to you about killing Barney Trimble after the boat backed out? A. It seems like he did, but I do not remember. I would not want to swear that, for I have forgotten it. It seems like he did. Q. Are you able to tell anything that he said? A. I do not want to tell anything but what I know, but I do not know. Q. Do you remember anything that he said about it? A. I don't remember whether he did or not. Q. You don't remember whether he said anything about it or not? A. Seems like he did, but I will not say because I do not remember what he said. Q. If he did say anything, was it or not this, or in substance this, that he did not want to have any trouble with Trimble, but that he could have killed Trimble there and not have been hurt for it, or in substance that?" (Objected to; sustained; defendant excepted.) "A. I think he said something; but I don't remember." Defendant moved to strike out his answer made to the Commonwealth's attorney in regard to this matter; overruled; defendant excepted. The court: "I understood him to say that he did not remember anything that was said. A. I said he said something, but I could not remember what he said, and I would not say because I do not know."

After this Boaz was recalled by counsel for McCandless and asked if he did not testify on the examining trial for McCandless and he said he did. He was then asked these questions: "Q. I will ask you if you on that trial and in answer to question No. 33 of your examination in chief by the Commonwealth's attorney, if you were not asked, where did Claude go? And didn't you make this answer, 'Up the hill to the road'; and in answer to question No. 34, you were asked this question, 'Didn't he get back on your boat?' and if you didn't answer in response to that, 'No, not then.' And question No. 35 was asked you, 'If he come on down,' and in an-

swer to that question you said, 'Yes, sir, and then came back and asked me if I would take him away, and I said yes, and he got in and I shoved out, and took him on down to Ison Anderson's'; and if question No. 36 was not asked you as follows: 'When Claude came back, what did he tell you?' And if you did not answer in response to that question, 'Not a word until we got in the river?' and question No. 37, 'What did he then state?' And if you didn't say, 'He said I could have killed that fellow and they could not have hurt me for it?' " (Objected to; sustained; defendant excepts and avows if the witness if permitted to answer would say that he did say all that on the examining trial.)  "Q. As a matter of fact and by way of refreshing your recollection, is not that what you did say about it then when it was fresh in your mind?" (Objected to; sustained; defendant excepts and avows that the witness if permitted to answer would say "Yes, that was what I swore then when it was fresh in my mind"; and that the witness would say that what Claude McCandless did say was, "I could have killed that fellow and they would not have hurt me for it.")

It is now insisted that it was error not to permit the witness to answer these last two questions.  In support of this position the argument is made that on his cross-examination by the Commonwealth Boaz, in answer to the question whether McCandless, after he got back on the boat, said anything about killing Trimble, replied, "Seem as though he did."  And it was, therefore, competent to show that Boaz in his evidence at the examining trial testified that when McCandless came back on the boat he said, "I could have killed that fellow and they would not have hurt me for it."

We find no objection to the ruling of the court in rejecting this evidence.  The witness Boaz, in the course of his examination, repeatedly said that he did not remember what McCandless said, and the trial judge, in the presence of the jury, in commenting on his evidence, remarked that he understood him to say that he did not remember anything that was said. It is true that Boaz, in answer to questions by the Commonwealth, said that it seemed like McCandless did say something about killing Trimble, but he could not remember what he said. The witness did not make the statement that McCandless said he was going to kill Trimble, but only that he said something about it.  What he said the witness did not know.  Aside from this, Boaz when testifying as a witness at the examining trial, did not make any answer in

conflict with what he said on the trial, nor was he on the examining trial asked what, if anything, McCandless said about killing Trimble. We do not think the court committed any error in the matter of rejecting this offered evidence, but if he did, it was harmless error.

The judgment is affirmed.