## Frazier v. Commonwealth.

((Decided December 20, 1918.)

### Appeal from Letcher Circuit Court.

1. Criminal Law—Change of Venue—Discretion of Court.—A change of venue in a criminal prosecution is a matter that addresses itself to the sound discretion of the trial court, and a judgment of conviction will not be reversed for failure to grant a change of venue, unless it is made patent that such discretion was abused.

2. Criminal Law—Change of Venue.—As Kentucky Statutes, section 1118, declare that "not more than one change of venue or application therefor shall be allowed to any person or the Commonwealth in the same case," after the trial court has overruled an application of the accused for a change of venue and entered the order in conformity to such ruling, the latter will not be permitted to thereafter withdraw the application and at the same or a subsequent term of the court again make application for a change of venue. To permit such proceeding would open the way for trifling with the courts, which cannot be allowed.

3. Criminal Law—Evidence—Competency.—The admission by the trial court of evidence concerning alleged improper relations between the accused and the wife of the person killed by the former, both before and after the wife obtained a divorce from the deceased, was not error, as such evidence was competent to prove a motive on the part of accused for the killing, and the

jury were carefully admonished by the court that the evidence could not be considered by them for any other purpose.

W. H. MAY, E. E. HOGG, J. M. BENTON, A. F. BYRD and FIELDS & DAY for appellant.

DAVID HAYS, CHARLES H. MORRIS, Attorney General, OVERTON S. HOGAN, Assistant Attorney General, and R. MONROE FIELDS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Affirming.

The appellant, James H. Frazier, was tried and convicted in the court below under an indictment charging him with the murder of William Banks and his punishment fixed by the verdict of the jury at confinement in the penitentiary for life. He was refused a new trial and has appealed. Before considering the grounds urged by his counsel for a reversal of the judgment, it will be proper to briefly state the material facts of the homicide.

Appellant shot and killed Banks on the morning of November 9, 1917, in Whitesburg. The shooting was done with a "high power" rifle owned by appellant and kept in his store. Immediately before the shooting Banks came out of the court house in front of the rear door of appellant's store, and after pausing at the entrance for a moment with his hand resting on a cement post of the court house, walked across the street in a direction that would have taken him away from the store. Appellant, who was standing in or near his rear store door, saw Banks come out of the court house and at once secured his gun, returned to the store door and shot at Banks, who was then about seventy-five yards from him and walking with his back toward him. The ball from the rifle entered the back of Banks and passed entirely through his body, producing immediate death. Although an examination was at once made of the body and clothing of Banks no weapon was found. Appellant was not seen to fire the shot that killed Banks, but numerous witnesses testified as to various circumstances that strongly tended to show the shot came from the rear of his store; and shortly after the shooting a search of the store resulted in the finding, in a place of concealment, of the gun used in the shooting, the appearance of which furnished indubitable evidence of its re-

cent use. Appellant did not at any time deny that he shot Banks, but did not admit that he had done so until after the finding .of the gun.

The facts thus far stated are undisputed. However, the evidence did not stop with the proof of these facts. There was evidence introduced in behalf of the Commonwealth for the purpose of showing a motive for the homicide, which conduced to prove an improper, if not criminal, intimacy between the appellant and Banks' wife that finally led to a rupture of the friendly relations that had long existed between appellant and Banks, and later, to a suit and judgment divorcing Banks and wife. The Commonwealth's evidence also conduced to prove that after the happening of these events Banks brought an action in the Letcher circuit court seeking the recovery of large damages against appellant for the alienation of his wife's affection, which was dismissed upon the production in court by appellant of a writing so directing, purporting to have been signed or authorized by Bank,s but the execution of which Banks thereafter denied, following the denial with an action in equity to set aside, on the ground of fraud, the judgment dismissing his suit for damages against appellant. The evidence further tended to prove that Banks was in Whitesburg on the day he was killed for the purpose of giving his deposition in that case, of which appellant as defendant in the action had received due notice.

The facts as to motive furnished by the foregoing evidence were in the main denied by appellant in testifying for himself; and additional evidence in his behalf furnished by his own testimony and that of other witnesses conduced to show that Banks bore him great ill-will and that in addition to being at all times offensive in his demeanor toward appellant, he had threatened to kill him and at one time shot and wounded him. In telling of the killing appellant said that when Banks came out of the court house he paused with his hand on the cement post, looked for a moment in the direction of his store door, and then turned and walked away with his back toward the store, whereupon appellant procured the gun, which was near at hand, and shot him. He did not say that when standing in front of the court house and looking in the direction of his store Banks assumed a bearing that indicated a belligerent state of mind, or that he was armed. He only claimed that he

feared Banks was in Whitesburg to kill him and would attempt to do so while there, and that his fears were superinduced by the previous threats and conduct of Banks and a former attempt of the latter to kill him.

We have read the evidence in this case having in mind the claim, made by appellant's counsel in argument, that the rupture of the friendly relations between appellant and Banks occurred after the latter was divorced by his wife; and that whatever intimacy there may have been between appellant and Mrs. Banks began since the divorce. We do not so understand the evidence. On the contrary it is reasonably apparent from the evidence that although himself a husband, appellant repeatedly called to see Mrs. Banks at her home before she was divorced from her husband and in the latter's absence; and also that the first difficulty between appellant and Banks took place before the divorce. We refer to the occasion when Banks upon returning home found appellant in a room with his wife, which so angered him that he drew a pistol on appellant and ordered him from the house. This occurrence was admitted by appellant, as was also the fact that it was before Banks and his wife were divorced. We also find that Mary Whittaker, a daughter of Mrs. Banks, testified that on one occasion in the absence of her father, appellant was discovered by her at Banks' house in the night in a darkened room with her mother, and that when she entered that room appellant requested her not to tell anyone of his presence there. It appears from the testimony of the witness that this incident occurred prior to the divorce. This occurrence was also admitted by appellant with the explanation that he had heard of Banks making some statement about him and was there to learn what he had said.

It is the contention of the Commonwealth that the evidence was sufficient to show that appellant had a double motive for taking the life of Banks. First, because the jealousy of Banks and his resentment of the relations between appellant and his wife interfered with the continuation of these relations. Second, because of Banks' efforts to involve appellant in the alleged fraud practiced in procuring the dismissal of the action of damages he (Banks) had brought against him for the alienation of his wife's affection, and respecting which fraud Banks was to give his deposition the day he was

killed. We think the evidence fully sustains this contention of the Commonwealth. As illustrative of the ill feeling between appellant and Banks growing out of appellant's relations with his former wife, it appears from the evidence that only a few months before Banks' death they had a difficulty in which the latter shot him in the arm. It does not appear from the evidence who was the aggressor in that difficulty, nor is it proper that the fact be now ascertained, but whatever may have been the conduct of Banks towards appellant prior to the homicide, it is not apparent from the evidence as to what then occurred that appellant had any reasonable grounds for taking the life of Banks. In other words the circumstances attending the act show it to have been a premeditatedly malicious killing justifying the verdict returned by the jury; and unless there was such error on the part of the court as prejudiced the appellant in some substantial right the verdict must stand. Whether there was such error remains to be determined.

The reversal of the judgment is asked on two grounds, viz: error of the court (1) in refusing appellant a change of venue, (2) in admitting incompetent evidence. The motion for a change of venue was first made by appellant April 10th and the trial court, the regular judge then presiding, after hearing evidence overruled it and ordered the summoning of a jury from the county of Pike. Thereupon appellant, who seemed unwilling to be tried by a Pike county jury, withdrew his application for the change of venue. On April 19th the appellant renewed his motion for a change of venue, which the court, the same judge presiding, overruled and ordered that a jury be summoned from Clark county to try appellant; the latter excepted to the ruling of the court refusing the change of venue, but did not object to the order for the summoning of the jury from Clark county. The case was then continued to the next, or August term of the court, but when called at that term, the regular judge of the court being ill, a special judge was agreed on to try the case, who being present took the required oath and proceeded to the performance of his duties. On the same day appellant moved the court to set aside the order of the previous term overruling the motion for a change of venue and filed an amended petition in renewal of the motion for a change of venue, the amended petition being supported

by a joint affidavit of two of appellant's attorneys. This last motion for the change of venue was also overruled, to which the appellant excepted. The case then went to trial before a Clark county jury, resulting as already stated.

We are not convinced from the evidence heard on the first and second motions for the change of venue that the court's action in overruling them was an abuse of discretion. As in all such cases the evidence was conflicting, but its weight was to the effect that appellant could obtain a fair trial in Letcher county and was in fact assured thereof by the securing of a jury from another county. Whether a change of venue should be granted in a criminal case is a matter within the sound discretion of the trial court, and its decision therein will not be reversed unless it appears that it abused its discretion. Carney v. Commonwealth, 181 Ky. 443; McDonald v. Commonwealth, 177 Ky. 224; Mansfield v. Commonwealth, 163 Ky. 488; Allen v. Commonwealth, 168 Ky. 325.

What has been said of the first two motions is also true of the one overruled by the special judge. The affidavit of counsel showing that certain statements derogatory of appellant and his defense had been made at a hotel in Whitesburg by a resident of the county in the hearing of some of the persons summoned from Clark county for jury service, before the jury to try appellant was impaneled, gave no cause for the granting of the change of venue by the special judge. The statements referred to could not have been prejudicial to appellant, as the record of the trial does not show that anyone serving on the jury heard them. Aside from what has been said the second and third motions for a change of venue might well have been overruled on the ground that the court was without authority to entertain them, for Ky. Statutes, section 1118 provides, that "not more than one change of venue or *application therefor* shall be allowed to any person or the Commonwealth in the same case." Here the first and second motions were withdrawn after the order had been made overruling them, and later renewed. Each of such renewals of the motion should have been treated as a new application, which is not permitted by the statute. To permit such proceedings would open the way for trifling with the courts, which cannot be allowed.

· The evidence heard on the trial of which appellant complains consisted in part of the pleadings in the actions brought by Banks against appellant, the first being the suit for the alienation of his wife's affections and the second the action in equity to set aside, on the ground of fraud, the judgment dismissing the first. The court should not have permitted the pleadings in the two actions to have been read, but as the pendency and object of the actions were competent as evidence on the question whether they furnished appellant a motive for killing Banks, and the court carefully admonished the jury that the contents of the pleadings could be considered only for that purpose, we cannot say that the reading of the pleadings was reversible error.

The other evidence objected to related solely to the alleged improper relations between appellant and Banks' wife both before and after the divorce, all of which was competent on the question of motive and of this the jury were repeatedly admonished. Ball v. Commonwealth, 125 Ky. 601; McCandless v. Commonwealth, 170 Ky. 315; Choate v. Commonwealth, 176 Ky. 427.

The record furnishes no reason for disturbing the verdict. Appellant had a fair trial and the judgment must be, and is affirmed.