## Taylor v. Commonwealth.
(Decided Nov. 27, 1936.)

KENNEDY & KENNEDY for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Upon trial on an indictment charging the appellant with the murder of Sam Allen, he was convicted of voluntary manslaughter and his punishment fixed at seven years confinement in the penitentiary.

His appeal is before us, wherein he assigns as errors committed by the court entitling him to a reversal (1) that it admitted incompetent testimony; (2) that the verdict is flagrantly against the evidence; and (3) that the court failed to instruct the jury upon the whole law of the case.

The facts as disclosed by the record are that on a Sunday evening in July, 1935, at about dusk, the deceased, Sam Allen, was shot and killed by the appellant, Charlie Taylor, in the yard of Allen's home as he approached his house.

The evidence is conflicting as to just what occurred at the time of this fatal shooting and whether the deceased or the appellant fired the first shot or was the aggressor therein.

According to the testimony of the appellant and his witnesses, he, with his brother, Dean Taylor, was in the

deceased's house with his wife and baby when the deceased, Sam Allen, approached his home from the rear, holding a 20-gauge, single barrel shotgun in his hands as he came, when, they testify, he "hollered" to his wife to come out there; that as she started out she asked him what he wanted with her, when he answered, "I am going to kill every damn one of you." On hearing this threat, the appellant states he walked to the door to see what was the matter with Allen and asked him what he meant by that, when deceased "come up with his gun" and fired at him, but that the first shot hit the door facing; that deceased reloaded his gun and fired at him again, when standing only four or five feet from him, the shot striking him in the hip, when the shot spread out and ranged upward from his hip to his shoulder. He further states that when this second shot was fired his brother and Allen's wife were standing near him, but on either side of the door, sheltered by the walls of the house and out of range of the shots fired from the gun of deceased.

Appellant further testified that after this second shot was fired at him by the deceased he drew his pistol and emptied its six loads at deceased, one of them striking him with fatal effect, whereupon they all attempted to leave the house when they were repeatedly fired on by deceased as they went.

It further appears that these parties, together with several other neighbors, upon this occasion had spent the day and had dinner at the nearby home of Frank Todd, during which time, some of them testified, Marie Allen, the wife of the deceased, and the appellant, Charlie Taylor, were seen there at Todd's home lying on a bed together in one of the rooms; that the deceased, Sam Allen, came into the house several times where this improper conduct on the part of his wife and appellant was going on, when he would stay only a short while, each time returning to his home to procure more "home-brew," in which they state he was rather heavily indulging during the day.

The Commonwealth witnesses, Andrew and Frank Todd, both testified to their having observed that an apparently illicit affair was going on and had been going on for some while between the wife of the deceased and the appellant; that they had seen the deceased's wife, Marie Allen, and the appellant "laying on the bed to-

gether'' upon different occasions, and as to other instances of even more marked intimacy and improper conduct between them.

The evidence is further that upon the breaking up of this Sunday gathering at Todd's home at about 4 o'clock, Marie Allen left, with her grandmother, for her nearby home soon after appellant had left Todd's house, saying that he was going over to Science Hill to ''knock around.'' But he states he later changed his mind and instead went over to the home of the deceased, where he first met and talked with the deceased, Sam Allen, and went with him down to his barn, where, it is testified, there arose a quarrel between appellant and the husband, who acted as if he were very angry with him. Appellant denies this or that any unpleasantness occurred there between them. After soon leaving the husband at the barn, he went back to the house where he joined the wife of deceased and his brother, Dean Taylor, who had also come there. They were soon joined at the house by the deceased, who stayed with them but a short while, when without saying anything he left them and was not seen by them again for about three-quarters of an hour, when he returned armed with a shotgun, which, they testify, he fired at appellant when he had approached to within four or five feet of the back door of his house, after calling to his wife with a threat to come out, as set out, supra.

Appellant introduced many witnesses who testified that his general reputation for peace and quiet was good, while that of deceased was that he was fussy and quarrelsome, when drinking.

Marie Allen, the wife of deceased, and Dean Taylor, brother of appellant, were, outside the participants in the shooting, the only eyewitnesses to it, and they each corroborated the testimony of appellant as to the facts and circumstances of appellant's fatally shooting Allen when approaching his home with a borrowed gun, except as to the position of the deceased when he was shooting at and shot by appellant, Dean testifying that the deceased was some thirty feet distant from his back door, rather than only four or five feet, as claimed by appellant, when he shot him.

As to who was the first to fire, it is testified by a number of Commonwealth's witnesses, who were neigh-

bors of the parties, that they heard the firing reports both of the pistol and the gun upon this occasion at the home of the deceased and that the pistol was fired first.

On the other hand, the evidence for the accused is that he and deceased had always lived as neighbors and had been friends for a long time and that never before this fatal encounter had there been any estrangement or quarrel between them. Further, several witnesses testified that the deceased was a quarrelsome and even dangerous man when drinking, and, also, that at such times he was abusive and mistreated his wife. To such effect, she testified that upon one such occasion he had threatened to kill her; also, that she had separated from him for awhile, not because of his jealousy, but because of his drunkenness, during which time Allen had lived with appellant at the home of his father.

Upon this strangely conflicting evidence concerning material questions, the court gave the jury several instructions covering the issues made, among which was the usual self-defense instruction, which was objected to by the appellant upon the ground that it was erroneous in limiting his right to shoot the deceased only in his own self-defense, or merely to protect himself against the armed threat of deceased. He contends that it should have embraced the further right to shoot deceased in protecting his brother and Marie Allen against the attack of deceased, after he had said that he was going to kill every one of them.

To this it may be said that the right, under the circumstances here shown by the evidence, to shoot Allen, when (though armed) he was returning to his own home and family, in defense both of himself and also of Marie Allen and his brother, Dean Taylor, at the time standing by or near him in the Allen home when fired upon by deceased, would, as in any case where the right to shoot in defense of another is claimed, depend at least upon his right to protect them from some threatened injury, either real or to the defendant apparent.

Turning now our consideration to the first objection urged by appellant, that the court improperly admitted evidence tending to show there existed an intimate or illicit relationship between the accused and the wife of the deceased: Appellant contends that this evidence related to a matter foreign and altogether irrelevant to the offense charged and was introduced, not as

probative of it, but for the purpose of inflaming and prejudicing the jury and was not needful for showing motive, in that such was sufficiently established by the admitted fact of his having killed deceased.

We do not regard this objection, nor the argument made in support of it, as meritorious. Although neither the presence nor absence of an illicit realtionship between these parties may have influenced the appellant to shoot and kill the deceased without lawful justification, we have yet many times declared that such evidence is material as bearing on the motive of the accused. If the witnesses testifying as to such relationship told the truth, their evidence tended to show that appellant was enamoured of Sam Allen's wife, involving them in a baneful triangle which was potently calculated to have aroused his jealousy of the husband and motivated his recourse to criminal violence for the husband's removal.

While the long established and followed general rule as to the admission of evidence of a different crime is that it is not authorized for the purpose of convicting the defendant of the one charged, there is yet this exception thereto, permitting the introduction of evidence as to other offenses where allowed for the purpose of showing motive, etc., which is equally well recognized as the rule.

The ordinary feelings, passions, and propensities under which parties act are facts known by observation and experience; and they are so uniform in their operation that a conclusion may be safely drawn; that if a party acts in a particular manner, he does so under the influence of a particular motive. "Any motive rendering the killing probable or explaining it against inherent improbabilities, or otherwise helpful to the jury as a circumstance, may be proved against defendant, as his conduct before committing the offense may be important, even though it is not indispensable to a conviction that a motive should appear." Bishop's New Criminal Procedure, sec. 629, ss. 4, page 1615. See, also, the cases of Frazier v. Commonwealth, 182 Ky. 620, 207 S. W. 13; Ball v. Commonwealth, 125 Ky. 601, 101 S. W. 956, 31 Ky. Law Rep. 188; McCandless v. Commonwealth, 170 Ky. 301, 185 S. W. 1100; Choate v. Commonwealth, 176 Ky. 427, 195 S. W. 1080; Frost v. Commonwealth, 258 Ky. 709, 81 S. W. (2d) 583, 586; Tompkins v. Commonwealth, 117 Ky. 138, 77 S. W. 712, 25 Ky. Law Rep.

1254; State v. Abbatto, 64 N. J. Law, 658, 47 A. 10; Commonwealth v. Fry, 198 Pa. 379, 48 A. 257; State v. Aughtry, 49 S. C. 285, 26 S. E. 619, 27 S. E. 199.

In the Frost Case, supra, we thus stated and applied the rule as to the competency of such evidence for showing motive, as tending to explain the cause or interest prompting defendant's resort to violence, as follows:

"It is next argued that the court erred in admitting evidence concerning appellant's attention to Mrs. Collins and his threatening attitude when spoken to by others about the matter, but this contention is without merit since such evidence is competent as bearing on the question of motive or the state of mind of accused toward deceased."

As to appellant's next objection, that the verdict is flagrantly against the evidence, we feel that our recital, as made supra, of the very conflicting evidence here introduced by each side shows that it was ample to sustain the jury's finding either for or against appellant and furnishes sufficient adverse answer to this objection.

The jury was not required to accept the theory or version of either side as to the circumstances of the defendant's admitted killing of Allen, nor to give either full or any faith to appellant's strained and fanciful account of his shooting and killing of the deceased in his claimed self-defense. It was its exclusive right to appraise and draw its own inferences from the defendant's account of the killing, purporting to portray the manner and circumstances under which the killing of Allen occurred, and to decide whether or not they believed from the evidence the killing of deceased was done by the defendant in his necessary or to him apparent necessary self-defense, or whether or not, on the other hand, it involved such contradiction of well-known physical facts as to amount almost to an impossibility for it to have occurred in the way stated.

Appellant's testimony, as to the effect of Allen's shooting him with a shotgun, while standing only five feet away from him, and his practical escape from injury therefrom, is clearly contrary to all common experience and observation, which would strongly induce the belief that had the deceased upon this occasion fired his gun, though loaded only with birdshot, at appellant at this distance and hit him in the hip, it would have

inflicted a more serious injury than depicted by appellant and the shot would not have scattered over him from his hip to his shoulder. Clearly the jury was justified in rejecting such an account as being an incredible one.

The jury refused to accept such a strained and weird account of deceased's shooting of appellant and its verdict can surely not be held to be flagrantly against the evidence, especially where, as here, there was opposed to it the evidence of defendant's brother, also an eyewitness, that the deceased was much further than five feet away from the house when he fired at appellant and that of several of the nearby neighbors, who testified that they heard the shots fired by the appellant and deceased on this occasion and that they heard those fired by the defendant with his pistol first or before they heard the later report of deceased's shotgun.

Clearly the jury was authorized to determine what part of this conflicting evidence as to the shooting was true and who or what group of witnesses they, as sensible men, experienced in considering the sinister motives often prompting violent conduct in erring men, should believe. Bullock v. Commonwealth, 249 Ky. 1, 60 S. W. (2d) 108, 94 A. L. R. 407.

The final objection, as stated and partly considered, supra, is that the self-defense instruction given was erroneous in failing to include therein the further right of the defendant to shoot the deceased, when armed and approaching his own home, in the defense of the deceased's wife and appellant's brother, then with defendant in the house. However, it does not appear by either his or their evidence that they were at the time exposed to or within the range of deceased's gun fire or endangered by it. On the contrary, even according to appellant's testimony, he was the only one who stood in or near the open door, before the deceased, or at whom deceased fired. As to the then danger therefrom of his companions, he states that they were standing well off to his side and protected from the fire of deceased by the walls of the house; also, that he did not draw his gun or shoot in his own self-defense until after the deceased had shot twice at him, nor did he testify that the deceased was at the time shooting at any one other than himself, when he shot and killed him in his own self-defense.

There was therefore no evidence here upon which such an instruction as contended for could have been given, embracing the right of defendant to kill in defense of another. It was therefore not here improper for the court by its instruction to limit the defendant's right to shoot and kill the deceased in his own self-defense, without including therein the right to kill in defense of another, where defendant claims that his shooting and killing of the deceased was done only in defense of himself. We conclude that such contention is not to be sustained and that the instruction as given was here proper.

Therefore, we are of the opinion that the judgment should be, and it is, affirmed.