## Bryant v. Commonwealth.

(Decided March 14, 1924.)

### Appeal from Breathitt Circuit Court.

1. **Criminal Law—No Error in Refusing Continuance for Absence of Witnesses Who were in Court.**—The court did not err in refusing a continuance because of absence of witnesses where all of the witnesses were brought into court by attachment in time to have testified for the defendant, but none of them was called as a witness by him.

2. **Criminal Law—Refusal of Continuance for Absence of Counsel Held Not Abuse of Discretion.**—The court did not abuse a sound discretion in refusing to halt a trial after it had been begun and continue the case because, under his contract of employment, one of defendant's attorneys was privileged to and did leave before the trial was completed to attend to matters in another court, it conclusively appearing that remaining counsel had the ability to present and protect his every right upon the trial.

3. **Criminal Law—Refusal to Grant Change of Venue Because of Prejudice Held Not Abuse of Discretion.**—In a homicide case, held, that the court did not abuse its discretion in denying a motion for change of venue though there was evidence that the community was greatly excited and that the account of the killing published in the local paper was unfair and that the victims of the killing were widely connected by blood or marriage with many prominent and influential citizens of the county and defendant was a laboring man.

4. **Criminal Law—Denial of Change of Venue Asked for Prejudice Ordinarily Not Disturbed if Supported by Weight of Opinion Evidence.**—It is only in exceptional cases that the Court of Appeals will reverse a decision of the trial court denying a motion for change of venue on the ground of prejudice in a homicide case when supported by the weight of opinion evidence.

5. Homicide—Admission of Evidence Concerning Character Held Not Prejudicial.—In homicide case error in permitting witness to testify that she heard somebody say that accused sold whiskey for a living held not prejudicial.

6. Homicide—Testimony of Witnesses as to Accused's Moral Character Held Not Inadmissible as Too Remote.—Testimony of witnesses as to accused's moral character was not incompetent because not confined to a reasonable time before the commission of the homicide, since, although no particular time was specified, the present tense was employed in both the questions and answers, showing clearly that the witnesses were asked and testified as to his reputation at the time of the trial and not at a remote time.

7. Homicide—Verdict Inflicting Death Sentence Held Not to Indicate Prejudice or Passion.—It cannot be said, that verdict inflicting death sentence for killing of defendant's wife and another man was so excessive as to indicate prejudice or passion upon the part of the jury, in that there was proof of criminal intimacy between the victims of the homicide, since the court cannot give recognition to the so-called "unwritten law."

E. C. HYDEN and A. F. BYRD for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL and MOORMAN DITTO, Assistant Attorney Generals, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant was convicted of murdering his wife, and his punishment fixed at death. For reversal of the judgment he urges four grounds, the first of which is that the court erred in overruling his motion for a continuance.

The killing occurred June 28th, 1923, the indictment was returned July 2nd, and the case called for trial on July 7th, when defendant asked for a continuance until the next term of court, upon the ground that he had not had sufficient time for preparation of his case. This motion the court overruled, but set the case for trial on July 23rd. When the case was called for trial on the 23rd, the defendant again moved for a continuance because of the absence of five witnesses, and the motion was again overruled.

As all of these witnesses were brought into court by attachment in time to have testified for the defendant, but none of them was called as a witness by him, it is apparent the court did not err in refusing a continuance because of their absence.

After this motion for a continuance was overruled, the trial was begun and two jurors out of the regular panel qualified upon the *voir dire*. The court then drew 124 additional names from the wheel and directed the sheriff to summon them to appear on July 25th for jury service.

When court convened on the 25th, the defendant entered a motion to set aside the order refusing him a continuance, and to continue the case until the next term of the court, which was overruled. In support of this motion, affidavits of the defendant and one of his counsel, Mr. Byrd, were filed, in which it was alleged that Mr. Byrd had been employed and had accepted the employment with the understanding that he had a prior engagement to represent a defendant in the Carter circuit court, with which his employment in this case was not to interfere. That he had just learned that that case had been set for trial on July 26th, "and that on account of his having been employed in that case prior even to the commission of the actions of which defendant herein is charged, he is compelled to go to Carter circuit court at Grayson, Ky., and that it will be impossible and impractical for him to remain longer at this term of court to assist any further with this case." That he is anxious to assist defendant in the trial of his case, and if continued to the next term of court, he would arrange his other matters so as to be present to assist in the trial, "unless hindered by unforeseen events."

As defendant had the active assistance of his two brothers and two able lawyers for nearly a month in the preparation of his case for trial, and every person he desired as a witness was in attendance and available at the trial, it is apparent the court did not err in refusing the continuance, unless because of the fact that after the trial of the case had begun and a special venire had been summoned to complete the jury, one of the two attorneys employed by defendant to defend him was unable on account of a prior engagement to remain in court until the trial could be completed.

Aside from the fact defendant employed the attorney with the knowledge that his prior engagement might prevent his presence at the trial, the record furnishes conclusive proof of the ability of his other counsel to present and protect his every right upon the trial, and we are firmly of the opinion the court did not abuse a

sound discretion in refusing to halt the trial after it had been begun and continue the case because under his contract of employment, one of defendant's attorneys was privileged to and did leave before the trial was completed.

There is therefore no merit in the contention that the judgment should be reversed because of any error in refusing a continuance.

It is next urged that the court erred in refusing defendant's motion for a change of venue. Upon the hearing of this motion fourteen witnesses testified for the Commonwealth that in their judgment a fair and impartial trial could be had in Breathitt county, while for the defendant five witnesses testified to the contrary. We cannot, therefore, say that the court abused a sound discretion in overruling the motion, unless, as is contended by counsel for defendant, certain facts testified to by his witnesses are so conclusive of a county-wide prejudice against the defendant as to render the mere expression of opinion by any number of witnesses that he could obtain a fair and impartial trial of but little, if any, probative value.

These facts are that the killing by defendant of his wife and a young man named Sam Lyons, in a store in Jackson, at about seven o'clock in the evening, greatly excited the community against him; that there was some talk of mobbing him; that the account of the double killing published in the local paper was unfair to him, and circulated generally throughout the county; that an untrue statement was published in a Lexington paper to the effect that he had offered to confess his guilt and accept a sentence of life imprisonment in the penitentiary, and that this paper was widely circulated and read throughout Breathitt county; that both of his victims were widely connected by blood or marriage with many prominent and influential citizens of the county, and that defendant was a laboring man, practically without means or influential connections of any kind.

Conceding that a decision of whether or not a fair and impartial trial can be had in the county where the homicide occurred may depend upon proven facts rather than expressions of opinion by individuals, as was held in Browder v. Commonwealth, 136 Ky. 45, 123 S. W. 328, it is nevertheless true that it is only in exceptional cases that this court will reverse the decision of the trial court when supported by the weight of opinion evidence, since

the question is at last one of opinion that of necessity must be and is addressed to the sound discretion of the trial court, who occupies a much better position than we do to judge whether the hostile sentiment, always existing to some extent against a defendant charged with murder, so pervades the entire county as to prevent a fair trial.

With reference to the facts detailed above as proven by the defendant, the Commonwealth showed that the talk of mob violence originated with a drunken man at the time and in the immediate vicinity of the homicide, was confined to a few irresponsible people and had entirely subsided long before the trial.

The account of the killing in the local paper does not materially differ from the Commonwealth's evidence on the trial, and after a careful consideration of all of the evidence, we find ourselves unable to say that the court abused a sound discretion in denying appellant's motion for a change of venue.

Although the trial consumed several days, and many witnesses were introduced upon each side, there are but five assignments of error in the admission and rejection of evidence, and in only one of these is there any merit whatever.

Mrs. Jerry Davidson was introduced by the Commonwealth, in rebuttal, and testified that she was acquainted with the defendant's general moral reputation in the town where he lives, and that "it is bad." On cross-examination, counsel for defendant asked about his reputation for honesty and truthfulness, and she testified that she never had heard his reputation for honesty discussed, but that she heard people say that he was not truthful. She was also asked if he was not a working man, to which she replied, "I never saw him working, but I reckon he works." On re-direct examination, she was asked by counsel for the Commonwealth, "What do people say in the neighborhood where he lives about how he makes his living?" and she was permitted to answer, over defendant's exception and objection, "Well, they say he sells whiskey."

The court doubtless admitted this evidence upon the theory that it was rendered competent by reason of defendant's counsel having asked the witness whether or not the defendant was a working man, but we do not think the objected to evidence was competent upon any

ground. We are, however, just as clear that its admission was not prejudicial. She said she did not know how he made a living or whether he worked or not, and it is inconceivable that the verdict was influenced in the least by the fact that a character witness said she had heard somebody else say that he sold whiskey for a living.

It is also insisted that the testimony of this and other character witnesses was incompetent because not confined to a reasonable time before the commission of the crime. But there is no merit in this contention, since, although no particular time was specified, the present tense was employed in both the questions and answers, showing clearly that the witnesses were asked and testified as to his reputation at the time of the trial, and not at a remote time.

The final contention is, that the verdict is so excessive as to indicate prejudice or passion upon the part of the jury.

The basis of this argument is that juries rarely ever convict, and never inflict a death sentence, where, as here, there is proof of criminal intimacy between the defendant's wife and the man killed. In other words, the argument is that this court ought to give recognition to the so-called "unwritten law" to the extent at least of saying that a jury was influenced by passion or prejudice in the infliction of a death sentence where a husband murders his wife because of his belief that she had been untrue to him.

This we cannot do. The jury could not possibly have avoided finding defendant guilty of murder upon the evidence in this case, as it impresses us, and the fact that they fixed his punishment at death rather than life imprisonment does not authorize an inference of passion or prejudice upon their part, unless it be assumed passion or prejudice are inferrable from a jury's disregard of the so-called unwritten law in a case where the evidence is overwhelming that at the time of the killing the wife was not guilty of any misconduct. There is no complaint of the indictment or the instructions.

The record is peculiarly free of errors in the admission and rejection of evidence, and nothing occurred upon the trial that in our judgment would afford legal justification for a reversal of the judgment. It is therefore affirmed.

Whole court sitting.