## Conn v. Commonwealth.

(Decided May 20, 1932.)

(Rehearing Denied Nov. 25, 1932.)

JOHN M. THEOBALD for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and defendant below, Cegar Conn, with his brother, Allie Conn, were jointly indicted by the grand jury of Carter county, in which they were accused of murdering Walker Ross, who was shot and fatally wounded in a battle between him and the two defendants, fought on May 8, 1931, in the village of Limestone, in Carter county, Ky., between 4 and 5 o'clock p. m. At his separate trial appellant (to whom we shall hereafter refer as defendant) was convicted of voluntary manslaughter, and punished by confinement in the penitentiary for 21 years. His motion for a new trial was overruled, and from the verdict and the judgment pronounced thereon he prosecutes this appeal, urging through his counsel a number of alleged errors as grounds for reversal, some of which were not regarded as of sufficient importance to deserve mentioning in brief, but those that are mentioned and relied on therein may be listed as: (1) Overruling defendant's motion for a change of venue; (2) overruling his motion for the judge to vacate the bench; (3) overruling his motion to procure a jury from another county; (4) that the verdict of conviction is flagrantly against the evidence; (5) error in the admission and rejection of evidence; (6) error in the instructions, and (7) newly discovered evidence, each of which will be briefly considered and determined.

1. The grounds set forth in the petition for a change of venue consisted chiefly, if not entirely, in the fact that the deceased was a son-in-law of one R. A. Carpenter, a man 70 odd years of age, who had filled the offices of sheriff, county judge, and representative in the Legislature from Carter county, but who held the

last office many years ago, and then retired into privacy. It was set out in the petition that Carpenter was a man of influence, and was interested in the prosecution, and that he had formerly prosecuted appellant and his father for offenses growing out of an attempt to shoot his son-in-law, the deceased, some years prior to the homicide involved in this prosecution; but it was nowhere stated in the petition that there existed a widespread prejudice or adverse sentiment against defendant throughout the county or in any particular section of it. The petition was supported by six stereotyped affidavits in which the affiants stated that they were "acquainted with the state of public opinion in said Carter county, and that he (they) verily believes the statements of the petition for a change of venue are true." Each of the affidavits was in exact language, and contained no fact except by reference to the petition, the substance of which has been given.

The commonwealth filed affidavits of 8 prominent citizens of the county, some of whom held public office, and in which it was stated, in substance, that affiants were acquainted with the public sentiment of the citizenry of Carter county, and that there were none adverse to appellant, or to any of the members of his family, and that affiants were convinced that a fair and impartial trial could be had in the county. The court thereupon overruled the motion for a change of venue, and, on the motion for a new trial relying upon that alleged error, there was developed the fact that 33 jurors were examined, and 29 of them qualified, 14 of whom were peremptorily excused by defendant, and 3 of whom were excused in the same manner by the commonwealth. From such brief recital it clearly appears that the basis of ground 1 is without foundation in fact, and the ruling of the court complained of therein is abundantly sustained by our opinions in the cases of Stamp v. Commonwealth, 220 Ky. 133, 253 S. W. 242; Bryant v. Commonwealth, 202 Ky. 427, 259 S. W. 1038; Foure v. Commonwealth, 214 Ky. 620, 283 S. W. 958; Schleeter v. Commonwealth, 218 Ky. 72, 290 S. W. 1075, and others cited in those opinions, as well as still others rendered both before and since. We therefore conclude that ground 1 is without merit.

2. The alleged error embodied in ground 2 did not occur at the appearance term of the trial, but at a subsequent one to which a continuance on defendant's mo-

tion was granted at the appearance term. The latter term was held in August, 1931, at which the motion for a change of venue was made and overruled. Following that ruling (and at the same term), the commonwealth announced ready, but defendant announced not ready, and made his motion for a continuance, which the court sustained, and the cause was continued until the November, 1931, term of the court, at which the motion for the presiding judge to vacate was made. It was not based upon any facts that were either discovered, or which occurred, between the two terms of court, and the action of the court in overruling it was proper, independently of the merits of the ground, because it was made too late to be available as has been held by us in a number of cases, among which are Vance v. Field, 89 Ky. 178, 12 S. W. 190, 11 Ky. Law Rep. 388; Hargis v. Commonwealth, 135 Ky. 578, 123 S. W. 239; Tolliver v. Commonwealth, 165 Ky. 312, 176 S. W. 1190; Littleton v. Littleton, 229 Ky. 353, 17 S. W. (2d) 204.

But, when the grounds for the motion are examined, it is demonstrated that they fall far short of measuring up to the prescribed and adjudged rules of practice that have been announced by this court as essential to require the judge to sustain the motion and vacate the bench. In the very recent case of Neace v. Commonwealth, 243 Ky. 149, 47 S. W. (2d) 995, 997, in dealing with this question of practice (and also cases cited therein), it was held that not only was the movant required to state facts and not conclusions, but also that the facts when stated "must be of such a character as should prevent the judge from properly presiding in the case," and which should necessarily indicate bias or prejudice on the part of the trial judge against the accused, or facts which afford a reasonable basis for the belief that one of personal integrity would not undertake to preside as judge in the case. The affidavit upon which the motion was based in this case contained no such language, and for which reason, we repeat, it fell far short of the requirements laid down in the cases referred to. The court, therefore, did not err in overruling the motion, and this ground must also be denied.

3. But little need be said with reference to ground 3, since section 281 of the Criminal Code of Practice (as it then was) expressly forbade our reviewing the action and ruling of the court upon the matter therein complained of. But, were it otherwise, and if we had authority to review the complained of ruling in this

respect, we would have no hesitancy in concluding that the developments on the trial demonstrated that defendant was not prejudiced thereby, since it was conclusively shown that a qualified jury could be and was obtained from Carter county without serious trouble, or hindrance to the progress of the trial. Therefore this ground must be disallowed also.

4. The disposition of ground 4 calls for a brief recitation of the facts as testified to by the witnesses. Some years before this homicide, the decedent, Walter Ross, shot and killed a brother of the defendant. Continuously following that time, enmity existed between the members of the two families, and witnesses for the commonwealth testified to threats made by defendant against deceased, which in the language of one of the witnesses was: "He told me a fellow by the name of Ross killed his brother and he said if he met Ross him or Ross one would have to die." About 11 o'clock a. m. of the fatal day, defendant and his brother, who was jointly indicted with him, went to Limestone, ostensibly for the purpose of getting a job of loading ties into a car, but they failed to obtain employment and remained about the village throughout the remainder of that day. A witness for the commonwealth testified that defendant was drinking and offered him (witness) a drink, while another testified to odors of whisky emanating from defendant's breath. Others, however, testified that defendant did not appear intoxicated, nor did they see him take a drink on that day. However, after the fight was over, there was a broken bottle discovered in his pocket, but which he claimed was vinegar that he had purchased under instructions from his mother. One Sam Middleton owned and operated a country store in the junction of the public highway with the C. & O. Railroad track, the highway running along the right side of the store building. Between 4 and 5 o'clock p. m., an automobile with three men in it stopped in the road by the side of the store, and defendant and his brother went from the porch of the store to the automobile, and were talking with its inmates. About that time deceased approached with his wagon and team driven by himself. He was seated on a sack filled with something, and by him was his wife and small child. The occupants of the automobile discovered his approach, as well as their obstruction of the road so that he could not pass. They therefore moved the automobile forward towards the left of the road next to the

store building, and backed it near to the point where it had first stopped. In moving forward they left defendant and his brother, and when the automobile again stopped they were just behind it.

About that time decedent was passing with his wagon and team, and all of the eyewitnesses testified that the shooting immediately began. The witnesses for the commonwealth testified that defendant, about the time deceased got opposite him, commenced the firing, which was simultaneously or immediately thereafter joined in by Allie Conn. Those witnesses state that deceased at the beginning of the shooting was bent over and had his hand on the wagon brakes located on the left side of the wagon bed, but that, when the first shot was fired at him by defendant, he immediately arose and drew his pistol and commenced firing at his assailants. Some eight or ten shots were exchanged, at least one of which was fired by the father-in-law of deceased, R. A. Carpenter, who was standing on the porch in front of the store building; but some of the witnesses for defendant testified that he fired two or three shots. He testified that he shot in defense of his son-in-law and his daughter, who was sitting beside him, and that he did not do so until after defendant and his brother began shooting at deceased in the wagon. Three or four witnesses testified, in substance, to what we have recited. The fatal bullet entered the shoulder of deceased and ranged down, though he received wounds on other parts of his body. According to the witnesses for the commonwealth, deceased, after the first two shots by defendant, either fell or jumped from the wagon and grasped defendant and threw him to the ground, and then engaged in an effort to wrest from him his pistol, which he succeeded in doing. He then went upon the railroad track, and was later carried to the doctor at Olive Hill, where his wounds were treated; but he died in 21 days thereafter from the effects of the wound in the shoulder according to the testimony of the physician.

Defendant was also slightly wounded in the encounter at separate places on his body which would indicate that he was shot some five or six times, but the physician stated that one or two shots produced more than one of his wounds. Allie Conn was also shot in the knee, after which it appears that he disappeared from the scene, and the testimony of defendant and some of his witnesses is to the effect that he (Allie) had

no pistol, nor did he fire a shot. However, some of the witnesses who testified for the commonwealth stated that he did engage in the shooting at deceased at the beginning of the difficulty. One of the witnesses who so testified substantially as above indicated, was the driver of the automobile, while another of its occupants contradicted him, and supported the testimony of defendant as to how the difficulty began, but he was thoroughly impeached for truth and veracity. Two witnesses who were engaged in loading ties across the railroad testified to facts corroborating the testimony of the eyewitnesses introduced by the commonwealth, and supported the theory that defendant and his brother began the difficulty by first shooting at the deceased while he was passing the automobile in his wagon.

On the other hand, defendant testified denying previous threats against deceased, or that he. or his brother were drinking on that day, and that the difficulty in which decedent received his fatal wound was entirely unexpected and unanticipated on his part. He stated that at about the time the wagon in which deceased was riding got opposite him and his brother, or opposite the automobile, deceased began rising and drawing his pistol and fired two shots at him and his brother, and that he (defendant) did all of his shooting in his necessary self-defense, as well as in defense of his brother. He was substantially corroborated as to how the difficulty began by several other eyewitnesses.

As is usual in such cases, a number of other collateral facts and circumstances were testified to, but in the main the proof of the contesting sides is substantially outlined in the recitation we have made of the testimony, and, from it, it is perfectly manifest that the verdict was not flagrantly against the evidence, and for which reason this ground also must be held as without merit.

5. Many of the items of testimony heard and offered at the trial and relied on in support of ground 5 are so clearly without merit that we do not deem it necessary to consume space nor time in their discussion. One of the most prominent ones so relied on is, that the proven threats of defendant against decedent made some 2 years before the homicide were too remote. The correct view upon that rule of practice is that a threat of the nature here involved is never too remote, if the state of feeling that prompted it continued thereafter

up to the time of the commission of the offense on trial, and in which it was introduced. Gambrel v. Commonwealth, 241 Ky. 39, 43 S. W. (2d) 335, and which is supported by the text in 30 C. J. 189, sec. 416, in which it is said: "The fact that the threats were made a considerable time before the homicide generally affects their weight and not their admissibility." However, where continued ill feeling up to the time of the homicide is proven, as was true in this case, it is doubtful if the remoteness would even impair the credibility of such testimony, much less operate to render it incompetent.

Another item of evidence argued in brief in support of this ground was that given by Martha Haywood, a witness for the prosecution, as to what defendant said to her some days after the homicide in a conversation on the porch of her residence while the two were sitting in a porch swing. Witness said that in that conversation defendant drew a pistol from his pocket and remarked: "I don't doubt this is the fellow that done the work." Counsel seems to be imbued with the positive conviction that the quoted testimony of that witness was grievously erroneous, but we acknowledge our inability to so view the situation with our impartial survey of the record. The purpose of the testimony was to exhibit the braggadocio attitude of defendant in displaying the weapon with which he did the shooting and to show the apparent absence of any regret therefor. The action and expression so testified to would scarcely have emanated from one who was compelled to slay his fellowman in the exercise of his right of self-defense. But, whether the testimony should be so interpreted or not, it is clearly apparent that, even if it should be considered as not strictly competent, it could not possibly be construed as having the effect contended for. There are other items of evidence introduced by the commonwealth, and to which defendant objected, that are discussed in briefs, but none of them exceed in materiality the ones we have noticed, and they may be dismissed without further amplification of this opinion.

In support of this ground complaint is also made of erroneous rulings of the court in rejecting offered evidence by the defendant. By far the most prominent of which was a ruling of the court sustaining the commonwealth's objection to questions asked the witness, Snipes, who was the driver of the automobile, and who

was introduced by the commonwealth. A stenographer's transcript was made of the testimony of that witness as given on the examining trial, and it was contended by the defendant that he made certain statements on that trial contrary to his testimony given at the trial in the circuit court. The attorney for defendant repeatedly propounded to him foundation questions for impeachment, which were promptly answered by the witness, and finally, after covering some two or three pages of the transcript with such cross-examination, the court declined to permit repetitions of the questions, and it is such ruling of the court that constitutes this objection. It requires no extension of this opinion to point out the groundless foundation for this argument. The questions in different form had been propounded to and answered by the witness a number of times, and the court was well within its province in stopping their repetition. However, the stenographer, who took the testimony at the examining trial and transcribed it, was later introduced in rebuttal by defendant, and she testified, without objection, to the contrary statements inquired about in the very question that the court so declined to permit the witness to answer, thereby giving to the defendant the benefit of what his counsel was seeking to obtain by propounding the question. Other alleged errors upon this phase of the case, but of no greater material import, are discussed in brief for defendant, but they may be similarly disposed of. We therefore conclude that this ground should share the fate of the others hereinbefore discussed.

6. The only errors complained of in support of ground 6 are: (a) That the instructions should not have authorized a conviction of defendant for aiding and abetting his brother and codefendant in the killing, if the latter shot and killed decedent, because, as argued, there was no evidence that his brother did any of the shooting, and which conclusion is based solely upon the testimony of defendant, and that of some of his witnesses, but not all of them, supported him upon that point. If such testimony was all that was heard on that issue, then the contention might possibly be correct; but, as we have hereinbefore pointed out, witnesses for the commonwealth testified that defendant's brother and codefendant participated in the shooting, and for which reason the court properly submitted the aiding and abetting feature in the principal instruction.

Another argument in support of this ground is (b) that the leading instructions on murder and manslaughter did not therein preserve the right of defendant to shoot in defense of himself or his brother, and for which reason it was prejudicially erroneous. But we held in the case of Cupp v. Commonwealth, 208 Ky. 231, 270 S. W. 774, 775, that, although the principal and leading instructions did not contain such excusing language, yet, if the court gave the proper self-defense instruction, the error in such omissions from strict propriety would be cured, and it would thereby become a harmless one. As said in that opinion: "We admit it would have been better if so drawn (i. e., as counsel for defendant insists it should have been), but the jury could not have misunderstood the rights of appellant, and he was not prejudiced by the failure to include those words." The court cited as sustaining that conclusion sections 340 and 353 of the Criminal Code of Practice. See Frazier v. Commonwealth, 243 Ky. 686, 49 S. W. (2d) 554. That (Cupp) opinion was later followed by the one in the case of Williams v. Commonwealth, 210 Ky. 518, 276 S. W. 497. In the still later case of Voils v. Commonwealth, 229 Ky. 305, 17 S. W. (2d) 238, 241, the principle was announced that "the jury is given the law of the case in the instructions as a whole, and they understand that they must be read and considered together"—citing Dennison v. Commonwealth, 198 Ky. 374, 248 S. W. 877, 878, and Hopkins v. Commonwealth, 210 Ky. 378, 275 S. W. 881. The opinion also cites and copies from the opinion in the Cupp Case.

Those opinions, and others referred to therein, manifest an awakening of this court to the true intent and purpose of the sections of the Criminal Code referred to, and which is, that a reversal of a verdict of conviction will not be ordered, except for an error prejudicial to the substantial rights of the defendant, and that a true application of those sections requires that, when the instructions as a whole are couched in language that presents to the jury the correct issues made by the evidence in such a form that an ordinarily intelligent person may comprehend them and the issues they submit, they should be held as sufficient, and that no purely technical but immaterial objection to them shall be regarded as prejudicial. Such observations also apply to another criticism of the instructions because they failed to say that the aiding and abetting of de-

fendant's brother (if the latter did the shooting) was done feloniously and willfully, since they did require the shooting by the brother, if perpetrated by him, to be willful and felonious, and that defendant, before being convicted as an aider and abettor, should have aided, assisted, advised, counseled, encouraged, or abetted "the said Allie Conn to do said shooting if he did the killing." "Said shooting" was, of course, the felonious, willful, and unlawful shooting by Allie Conn that was required in a former part of the instruction. The Voils opinion disposes of this criticism adversely to the contention of counsel.

7. The argument made in support of ground 7 is based upon these facts, manifested for the first time in the motion for a new trial which was sworn to: While the commonwealth's attorney was making his closing argument to the jury, Dr. Rose, who had testified in the case, told counsel for defendant that the clothing of decedent, as well as his body at the point where the fatal bullet entered on his shoulder, was powder burned, indicating that it was fired at close range, and not while decedent was in the wagon. In the motion for a new trial those facts were disclosed, and it is claimed that the information thus obtained was newly discovered material evidence. In the first place, it is of doubtful weight or effect, if it was true whether or not it was material, since decedent would have been fully authorized in drawing his weapon and in using it whether the first shot of defendant or his brother wounded him or not, and the fact that the fatal wound was inflicted after the shooting began or after decedent got out of the wagon was entirely immaterial, if and provided he was first shot at in the manner testified to by the prosecuting witnesses before he made his exit from the wagon and before he himself made warlike demonstrations. But, independently of such considerations, reliance upon such alleged discovered testimony came too late. It was discovered according to defendant's own showing, before the conclusion of the trial, and it thereby became his duty to make the fact known to the court and then offer to introduce it, rather than to take his chance on the character of verdict that would be returned, and, if against him, to then rely upon the information so acquired as newly discovered evidence. The law requires litigants, even one on trial for a crime, to act fairly and justly with their adversaries, including the commonwealth, and to be prompt in the use of the

tools afforded them in the presentation of their cases. The precise point was so decided by us in the case of Phillips v. Commonwealth, 227 Ky. 212, 12 S. W. (2d) 305, and others therein referred to.

Before closing it might be proper to say that the jury would have been justified under the evidence in this case in acquitting defendant on the ground of self-defense, or in defense of his brother, but its members were the sole judges of the credibility of the testimony, and the verdict of conviction that was returned by the jury is amply sustained by the testimony, depending upon which set of witnesses the jury believed. We have written in an almost endless number of cases that in such circumstances the court is without authority to interfere with the verdict.

Perceiving no error prejudicial to the substantial rights of defendant, the judgment is affirmed.