## Jarvis v. Commonwealth.

(Decided Oct. 7, 1932.)

(As Extended on Denial of Rehearing Dec. 9, 1932.)

GOLDEN, GILBERT & GOLDEN for appellant.
BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming.

Jess Jarvis was indicted in the Bell circuit court for the murder of Wadley Lee. Upon the trial of the case, he was found guilty of voluntary manslaughter, and his punishment was fixed at two years and one day imprisonment. He appeals.

The facts shown by the commonwealth are these: Mrs. Ida Webb lived with her step daughter-in-law, Martha Webb, in a small cabin, 16 feet square, on the side of a mountain. There were two beds in the cabin and a chair between the two beds. At the other end of the cabin was a bench. Mrs. Webb and Martha left the cabin in the afternoon of June 27, 1931, shutting the door, but not locking it. They returned to the cabin about 8 o'clock that evening, and when they got back they found there Belle Rogers, Jess Jarvis, and Jonn

Baker. Baker was sitting on the bench, and the other two were on the bed. They were all drinking. The room was mussed up; a bowl on the floor was broken in pieces, and things were thrown around. When they came up, Martha was carrying a little torch, which she dropped at the door. Lee told her to take it out or he would shoot it out. He asked who it was, and they told him, and he said to push the door. Lee was sitting on the side of the bed with his pistol in his hand and said to Martha Webb, "Come over here." She said, "No I am tired." Mrs. Webb told her to go over and not make him mad. She went to him, and he asked her to kiss him and she did so. He then called Mrs. Webb and asked her to kiss him. She said she did not want to, and he said, "I am going to call one of these other women." Lee was a cousin of Mrs. Webb, and so was Belle Rogers. He then told Belle Rogers he would slap her, and he slapped her on the face and she said, "Did that make you rich?" All of them were on the bed. Lee came to Belle Rogers and told her to get up. She was slow about getting up. He jerked his pistol and snapped it twice. She then got up and went over to the bed with John Baker. She called Lee to her. John Baker got up from the bed and said to fix his bed he would lie down, that he was tired. He pulled his shoes off and got under the cover. Mrs. Webb, Martha, and Jess Jarvis were on the bed. Belle got up to go to Baker. Lee got up and asked for liquor. They told him that there was not any. He then got up and told Belle to get up. She was slow about getting up. He got her by the feet and pulled her off on the floor and told her to dance. She said she could not dance; to make Ida dance. He then threw a bottle down by her feet and bursted it and jerked his pistol out and said "Dance," and she did. He said, "Ida get up." Mrs. Webb said, "All right I will fix the bed," and she sat down on the bench by Belle Rogers, who then got up and sat on Lee's lap, who was sitting in a chair between the beds. Mrs. Webb went over and fixed the bed on the far side from them, leaving Jess Jarvis and Martha sitting on the bed side by side, John Baker was still in the bed. Baker got up and walked to the center of the floor and went to rolling a cigarette and Lee said, "What do you want," Mrs. Webb said, "Nothing, he is going to make a cigarette." She went on fixing the bed. Just as she was getting the bed ready and

walked toward the other side of the house, Martha Webb and Jess Jarvis raised up. Jarvis said, "Wadley I have taken all that I am going to take off of you." Lee said nothing, and Jarvis started towards him. Martha Webb screamed and grabbed her, and they both went out of the door together. When they got out in the yard, they heard a lick and a shot fired, and just after this she heard Lee say, "Jess what have I done to you? I haven't done anything to you." She then heard a gun fired three or four times. Jarvis came out and told them that he had killed Lee. She said, "He is not dead?" he said, "Yes, he is dead." She said, "What made you do it?" He said, "I had to," and his hands went up and he said, "Oh, that makes two." When other people came to the house, Lee was lying on the floor dead. The shooting was about half past nine o'clock.

On the other hand, the proof for the defendant was in substance this: The defendant worked in a coal mine on a night shift. He went to the mine that evening to go to work, but the foreman laid him off. Soon after this he met John Baker, and they met Belle Rogers, who was a cousin of Mrs. Webb, and she said she was going over to Mrs. Webb's. They went by home, and then overtook Belle Rogers, and were going along with her towards Mrs. Webb's, which was some 4 miles away. When they got within a mile of Mrs. Webb's house, Wadley Lee came running around the hill, threw a pistol on them, and told them to stick their hands up. Jarvis stuck up his hands, but Baker did not. Lee joined them. Baker had a bottle of whisky, and Lee had a bottle also. They drank freely from both bottles, and went on to the house of Mrs. Webb. When they got there, nobody was at home and Lee told Jarvis to open the door and they all went in. This was about 7 o'clock. Baker, Belle Rogers, and Lee sat down on the bed, and Jarvis sat down on the bench. There was a bowl on the floor by the side of Baker. Lee looked over and saw the bowl and shot it to pieces with his pistol. He then got a hat off the wall and threw it down on the floor and told Baker to shoot at it. Baker shot at it with his pistol, but missed it. He then told Jarvis to shoot, but Jarvis shot with his pistol into the floor. It was a rainy night, and they were there together about an hour before Mrs. Webb returned.

After they had come, and after Baker had pulled his shoes off, Belle Rogers asked Baker for a cigarette; she crawled over the bed to get it. Lee said, "By God get out of there, what are you treating me this way for?" He snapped the pistol at Belle Rogers, and said, "Baby you are lucky you are alive." After this, when Baker got up to light his cigarette, Lee shoved Ida off his lap, and Jarvis and Martha Webb got up, and he fired at Jarvis with his pistol. Martha screamed and ran out of the door, and Ida Webb ran out with her before the shot was fired. Jarvis had done nothing and had said nothing to Webb up to this time. The shot which Lee fired went in Jarvis' overalls, but did not strike his person. When Jarvis shot, Lee fell over on his left side and struck his head against the puncheon floor. Jarvis did not strike him at all, and he shot Lee because Lee had shot at him and he shot in self-defense.

The proof shows that one shot passed through the palm of Lee's left hand and then went up his arm and lodged about the elbow. Another shot passed through the left arm above the elbow; another struck him above the collar-bone in front, ranged downward, and lodged in his back. Another shot passed through his right arm about three inches below the top of the shoulder and passed through his lungs, ranging downwards and backward. There was a bruise on the side of Lee's head as though he had been struck there with some heavy instrument. The flesh was cut and the wound bled. Lee was twenty-six years old and unmarried. He was about 6 feet tall. His pistol was lying by him with no loads in it and only one empty shell, which was two spaces to the right of the hammer.

The defendant earnestly insists that the judgment should be reversed for the following reasons:

(1) In the statement of the case to the jury this occurred: "Hon. Floyd Taylor in stating the case to the jury for the commonwealth said: 'After the killing was over he came out in the yard and held up two fingers and says that makes my second one I have killed.' To which statement the defendant objected, the court overruled said objection and the defendant excepts." The court could not know what the proof would be, and there was nothing before the court to show that the statement was not within the proof which the

commonwealth had reason to expect from its witnesses. There was therefore no error here.

On the examination of Mrs. Ida Webb, as shown by the record after the witness had stated that she heard Lee say, ''What have I done to you, I haven't done anything to you,'' this followed:

''Q. Did you say Wadley said that to Jess? A. Yes, sir, we went on in the road; he came out and told us that he killed Wadley Lee. I said, 'He is not dead?' he said, 'Yes he is dead.' I said, 'What made you do that?' He said 'I had to,' and had his hands up, and—(Defendant objects to what he said and did. Objection overruled, defendant excepts.)

''The court: Go ahead and tell all he said.

''Witness: He told us he killed Wadley. I said 'He is not dead?' he said 'Yes, he is dead.' I said, 'What made you do that?' He said 'I had to.'

''Q. Go ahead and tell what was said and done. A. He put his hand up to his head and said, 'Oh, that makes two,' and went on and left us and went back to the house.''

The defendant insists that the court erred in admitting the statement, ''Oh, that makes two.'' But this was immediately after the homicide, and was a statement made by the defendant himself, and all that he said was competent. The same rule applies to like testimony given by Martha Webb on the same subject. The defendant in his direct examination testified to what he said on the above occasion. On his cross-examination this occurred:

''Q. Is that when you said, 'Yes, I had to kill him,' then you held up your fingers and said that makes my second. (Defendant objects—sustained—plaintiff excepts, jury admonished. At this point the defendant moved to set aside the swearing of the jury and continue this case on account of the misconduct of the county attorney. Overruled—defendant excepts.)

''The Court: Gentlemen of the jury we are trying this man for this offense but no other.''

Later the defendant was recalled for further cross-examination, and this occurred:

"Q. You know Martha Webb, the witness for the commonwealth? A. Yes, sir.

"Q. Did you tell her here in Pineville on the street in front or near the Busy Bee Cafe, when she was here to go before the grand jury, that if she testified in this case before the grand jury that for her not to say, 'That makes two,' but to say, 'That makes two I had to kill.' (Defendant objects—sustained—plaintiff excepts. At this point the defendant renews his motion to set aside the swearing of this jury and continue this case because of the persistent misconduct of employed counsel for the prosecution in trying to bring before the jury the fact this man has killed two men. Overruled, defendant excepts.)

"The Court: Gentlemen of the jury you will disregard any reference here to any other man having been killed, you are not deciding this case on whether he has had any other trouble; that is not in this case at all. I permitted the statement to go to you in the first place only so far as it had something to do with this particular shooting in question."

It is earnestly insisted that there was gross misconduct of the prosecuting attorneys in persisting to get in the minds of the jury the fact that the defendant said in effect that he had killed another person; but it will be observed that the court sustained the defendant's objection to all the questions complained of, and then explicitly told the jury that this matter had no place in the case and should not be considered by them. This was the end of the matter. There was a large mass of testimony before the jury, and it must be presumed that they followed the instructions of the court and disregarded this matter which the court directed them not to consider. A judgment may only be reversed when upon the whole case the defendant's substantial rights have been prejudiced on the trial. That is not the case here. The thing the attorney tried to get before the jury was ruled out by the court, and then the subject was dropped. The prosecuting attorneys had a right to use reasonable efforts to get before the jury accurately the words which the defendant had used, and they obeyed the ruling of the court. What the defendant said just after the shooting was competent to show his state of mind, and the jury might infer from

what he said, as shown by the plaintiff, that he was not sorry for what he had done, but exulted in it. All he then said was therefore competent. McCandless v. Com., 170 Ky. 301, 185 S. W. 1100.

In 1 Greenleaf on Evidence, sec. 108, the rule as to the admission of such statements is thus stated:

"There are other declarations which are admitted as original evidence, being distinguished from hearsay by their connection with the principal fact under investigation. The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceeding circumstance, and, in its turn, becomes the prolific parent of others; and each during its existence has its inseparable attributes, and its kindred facts, materially affecting its character, and essential to be known in order to a right understanding of its nature. These surrounding circumstances, constituting parts of the res gestæ, may always be shown to the jury, along with the principal fact; and their admissibility is determined by the judge, according to the degree of their relation to that fact. * * * The principal points of attention are, whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character. * * *

"Many acts are in themselves of an equivocal nature, and the effect of them depends upon the intention or disposition from which they proceed, which is in general best determined by the expressions accompanying them."

In Eversole v. Com., 95 Ky. 623, 26 S. W. 816, 16 Ky. Law Rep. 143, and Sheperd v. Com., 119 Ky. 931, 85 S. W. 191, 27 Ky. Law Rep. 376, the res gestæ rule was not applicable on the facts shown by the opinions. In fact, the opinion in Eversole v. Com. is expressly rested on this ground, and in Shepherd v. Com. much incompetent evidence as to other offenses was introduced, and the judgment was reversed for this reason.

In Conn v. Commonwealth, 245 Ky. 583, 53 S. W. (2d) 931, 935, where objection was made to the admission of evidence of a similar statement by the de-

fendant, the court said: "The purpose of the testimony was to exhibit the braggadocio attitude of defendant in displaying the weapon with which he did the shooting, and to show the apparent absence of any regret therefor. The action and expression so testified to would scarcely have emanated from one who was compelled to slay his fellowman in the exercise of his right of self-defence."

On the whole record the court is unable to see that there was any error to the prejudice of defendant's substantial rights in this matter.

(3) When Belle Rogers was on the stand she was asked by the court to tell the jury what kind of a floor that was. The plaintiff objected to the question. The court sustained the objection, and the defendant avowed that she would answer that it was cut out of rough boards sticking up and knots. Five or six other witnesses had testified on this subject, and there was no dispute in the evidence. The court has a discretion in reasonably limiting evidence on questions that are undisputed, and there was no substantial error here. The same witness was afterward asked by the defendant on her redirect examination if it was not a fact that Wadley Lee shoved her out of his lap toward the bench. The court sustained the objection to the question, and it was avowed that she would answer in the affirmative. She had been permitted to state all that she knew about the case, and there was no evidence that she was in any danger at the hands of Lee. No substantial prejudice to the defendant's rights could have resulted from the court's stopping the examination where it was. A few other unsubstantial objections were taken to the testimony, but they were unimportant, and it is not deemed necessary to extend the opinion by setting them out.

(4) After the case was submitted to the jury they returned to the courtroom and asked that the direct testimony of the witness Ida Webb be read to them. Thereupon this was done: The defendant then moved the court allow the reporter to read the cross-examination of the witness to the jury. This motion was overruled by the court, because the jury indicated unanimously that the direct examination was all they wanted to hear. Of this the defendant complains.

The court has the discretion in such matters. A

trial should not be unnecessarily prolonged. The cross-examination of Ida Webb covers fifteen pages of the transcript. There is nothing in it contradicting her testimony on the direct examination or materially affecting any statements she made there. The jury did not wish to have it read, and clearly no substantial right of the defendant was prejudiced under all the circumstances.

(5) There was ample evidence on the testimony of the commonwealth to take the case to the jury, and the verdict of the jury is not palpably against the evidence. In such cases the verdict of the jury will not be disturbed, unless it is palpably against the evidence. If the evidence for the commonwealth was true, Jarvis got up and advanced on Lee in a threatening manner when Lee was sitting in the chair and disturbing him in no way. The wounds in Lee's body ranging downward tended to confirm this evidence. The testimony that Lee had snapped his pistol twice at Belle Rogers and the testimony that, after the shooting, Lee's pistol was found with only one empty shell in it, and this was two spaces from the hammer, tended to contradict Jarvis' testimony that Lee fired at him, and the testimony that the first sound that was heard by the parties leaving the house was a lick also tends to contradict this testimony. The parties were all drinking, and the proof does not indicate that up to the time Jarvis got up and advanced on Lee the latter had done anything to put Jarvis in danger. The jury seemed to have taken the view of the case that the homicide would not have occurred but for the fact that all the parties were drinking and was the result simply of a drunken brawl. The verdict is not palpably against the evidence.

Judgment affirmed.