Carl Cecil George ROGERS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1999–SC–0376–MR.

Supreme Court of Kentucky.

Nov. 21, 2001.

Thomas Louis Conn, G. Todd Bradbury, Lexington, Counsel for Appellant.

A.B. Chandler, III, Attorney General, Michael G. Wilson, Assistant Attorney General, Office of the Attorney General, Frankfort, Counsel for Appellee.

## INTRODUCTION

KELLER, Justice.

A Madison Circuit Court jury found Appellant guilty of one (1) count of First–Degree Manslaughter and three (3) counts of Second–Degree Wanton Endangerment and recommended that Appellant serve the maximum sentence of twenty (20) years imprisonment. The trial court entered judgment in accordance with the jury's recommendation. Appellant thus appeals to this Court as a matter of right.[1]

## BACKGROUND

During what can only be described as a "shootout" at a BP Station in Waco, Kentucky, Appellant shot and killed two men: James Irvin ("Irvin") and Larry Taylor ("Taylor"). The Madison County Grand Jury returned an indictment charging Appellant with two (2) counts of Capital Murder in connection with the deaths of Irvin and Taylor and three (3) counts of First–Degree Wanton Endangerment which alleged that Appellant wantonly exposed bystanders to a risk of death or serious physical injury by discharging a shotgun in their direction. The Grand Jury also charged Appellant's brother, Paul Rogers, as an accomplice in Taylor's murder.

At trial, the evidence demonstrated that this tragedy stemmed from over a decade of "bad blood" between Paul Rogers and Irvin which began after the two men fought "back in high school" after Irvin ridiculed the allegedly poor condition of Paul Rogers's automobile. The primary factual disputes at trial concerned how the shootings occurred. Appellant defended against the charges by arguing that he acted in self-defense after Irvin and Taylor, Irvin's employer and friend, attempted to ambush the Rogers brothers with the intention of killing them. The Commonwealth argued that Appellant and his brother were the initial aggressors on the day in question and that Appellant shot Irvin and Taylor with the intention of killing them and without any legal justification.

Testimony at trial established that Irvin shot Appellant in the leg with a .38 caliber pistol and that Appellant subsequently fatally shot Irvin with a shotgun, but the conflicting evidence at trial presented factual disputes with regard to the circumstances leading up to Taylor's death. Specifically, witnesses disagreed as to: (1) whether the shot from Appellant's shotgun which killed Taylor was the first shot (before Irvin shot Appellant) or the last one (after Appellant shot Irvin), and (2) whether Taylor struck Appellant in the head with a bottle or other implement which Appellant believed to be a firearm. The twelve (12) videotapes of trial testimony contain evidence supporting both the Commonwealth's and Appellant's versions of the events.

Following the presentation of evidence, the trial court gave the jury instructions that defined Intentional Murder, Wanton

1. KY. CONST. 110(2)(b).

Murder, First–Degree Manslaughter, Second–Degree Manslaughter, and Reckless Homicide and explained the law of self-protection including the initial aggressor and erroneous belief qualifications. The jury returned a verdict finding both Appellant and Paul Rogers not guilty in connection with Irvin's death, but convicting Appellant of both First–Degree Manslaughter in connection with Taylor's death and three (3) counts of Second–Degree Wanton Endangerment.

On appeal to this Court, Appellant argues the trial court committed reversible error by: (1) excluding testimony from Defense witness, Michelle Agee, concerning a threat allegedly made by Taylor and Irvin against the Rogers brothers; and (2) allowing the Commonwealth to introduce a photograph which depicted Taylor with his family. We address each alleged error in turn.

## EXCLUSION OF MICHELLE AGEE'S TESTIMONY

 In its case in chief, the Commonwealth called Jennifer Baker ("Baker") as a witness and questioned her about a conversation she had with Paul Rogers and a woman named Michelle Agee. During the defense's cross-examination of Baker, defense counsel asked Baker if, during that conversation, she had told Agee that Taylor and Irvin had discussed "taking care of the Rogers boys" in her presence. Baker denied having ever made such a statement. Defense counsel later called Agee as a witness, intending to elicit through her testimony that Baker had indeed told her that Taylor and Irvin had talked about

killing Appellant and Paul Rogers. The Commonwealth objected, arguing that the statement was inadmissible hearsay, and the trial court sustained the objection. On avowal, Agee testified as follows:

Q: What did she [Baker] say to you about Larry Taylor that day?

A: I was in the drive-through, and she asked about George, and I said he wasn't doing too good. And I asked about Larry. She said he wasn't doing too good. And she had said before we even pulled off that James and Larry had been talking for three weeks about killing George and Paul.

. . .

Q: What did she say about Larry and James and what did she say about George and Paul?

A: She just said that Larry and James had been talking about killing Paul and George for three weeks and she said that she told them to just leave them alone [inaudible].

We agree with Appellant that the trial court erred in excluding this testimony. Agee's testimony constituted hearsay within hearsay as it contained alleged out-of-court statements from both (1) Baker and (2) Irvin and Taylor. Agee's testimony was admissible, however, because "each part of the combined statements conform[ed] with an exception to the hearsay rule provided in [the Kentucky Rules of Evidence.]" [2] The statement Agee attributed to Baker was admissible pursuant to KRE 801A(a)(1) as a testifying witness's prior inconsistent statement.[3] Taylor's

---

**2.** KRE 805; *Thurman v. Commonwealth*, Ky., 975 S.W.2d 888, 893 (1998) (characterizing a similar statement as admissible "double hearsay").

**3.** *See* KRE 801A(a)(1):

Prior statements of witnesses. A statement is not excluded by the hearsay rule, even though the declarant is available as a witness, if the declarant testifies at the trial or hearing and is examined concerning the

and Irvin's alleged remarks about killing the Rogers brothers were admissible under KRE 803(3)'s exception for statements regarding "then existing mental, emotional, or physical conditions (such as intent, plan, motive . . . .)." [4]

The Commonwealth maintains that, even if the hearsay rule does not require the exclusion of Agee's testimony, Irvin and Taylor's alleged threatening statements were made at a time too far removed from the crimes to be relevant on the date of the shootings. However, as Professor Lawson explains, temporal remoteness does not render such evidence irrelevant:

It is well-settled that relevancy of expressions of states of mind can exist without a concurrence in point of time between the making of the statement and states of mind required to be proved. . . . [A] declaration may be used to prove a mental state at a particular time, though it was made before or after that point in time.[5]

In *Fleenor v. Commonwealth,*[6] this Court's predecessor found that a murder defendant's statement regarding his desire to kill the victim, made *two years* prior to the killing, was properly admitted for the inference that the same state of mind existed at a later date.[7] In the case at bar, the

> statement, with a foundation laid as required by KRE 613, and the statement is: (1) Inconsistent with the declarant's testimony.
>
> *Id. See also Jett v. Commonwealth,* Ky., 436 S.W.2d 788 (1969).

**4.** KRE 803(3). *See also Wilson v. Commonwealth,* Ky., 551 S.W.2d 569, 570 (1977) ("[O]n a plea of self-defense evidence of threats made by the deceased against the accused, though not communicated to the accused, *are competent to show the state of mind of the deceased* . . . ." (emphasis added)); *Moseley v. Commonwealth,* Ky., 960 S.W.2d 460, 462 (1997) ("KRE 803(3), by its very language, only applies to prove the state of mind of the *declarant, i.e.,* the victim in this case." (emphasis in original)); *Carnes v. Commonwealth,* Ky., 453 S.W.2d 595, 597 (1970) ("It has long been recognized that evidence of a threat made by the deceased with respect to the accused should be admitted on a plea of self-defense."); *Lay v. Commonwealth,* 186 Ky. 163, 216 S.W. 123 (1919) ("On another trial the court should permit all material evidence offered, tending to establish threats either in the form of declarations or acts or conduct made by [decedent] about or against Lay to go to the jury . . . for the purpose of illustrating in so far as it would do so who commenced the difficulty that ended in the death of [decedent.]"); *McCandless v. Commonwealth,* 170 Ky. 301, 185 S.W. 1100, (1916) ("In the trial of one charged with a felonious homicide, where the issue is whether the deceased or accused began the encounter, threats made by the deceased are admissi-

ble as evidence, as tending to show which one of them began the fight, although the threats were never communicated.").

**5.** Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 8.50 at 435–6 (Michie 1993). *See also DeGrella ex rel. Parrent v. Elston,* Ky., 858 S.W.2d 698, 709 (1993) (*quoting* Lawson § 8.50 and holding that a PVS patient's prior oral statements concerning medical care "while not dispositive of the question at hand, are competent evidence upon which a surrogate decision-maker could exercise substitute judgment in the circumstances presented.").

**6.** 255 Ky. 526, 75 S.W.2d 1 (1934).

**7.** *Id.* at 2 ("We cannot concur in the view that this was too remote in time . . . ."). *See also Conn v. Commonwealth,* 245 Ky. 583, 53 S.W.2d 931, 935 (1932):

> One of the most prominent [arguments] relied on is that the proven threats of defendant against decedent made some two years before the homicide were too remote. *The correct view upon that rule of practice is that a threat of the nature here involved* [a threat against the decedent's life] *is never too remote,* if the state of feeling that prompted it continued thereafter up to the time of the commission of the offense on trial, and in which it was introduced. . . . "*The fact that the threats were made a considerable time before the homicide generally affects their weight and not their admissibility.*" How-

brief lapse of time between the day of the shootings and the time the statement at issue was allegedly made do not obviate the relevancy of Agee's testimony.

■ While we agree with Appellant that the trial court erred by excluding Agee's statement, we disagree with Appellant's conclusion that this error requires reversal of his convictions. RCr 9.24 states that:

No error in ... the ... exclusion of evidence ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.[8]

In *Abernathy v. Commonwealth,*[9] the Court explained that RCr 9.24 requires a reviewing court to assess whether a trial court's error influenced the jury's verdict:

[A]s in the instance of any other error, we are enjoined by RCr 9.24 ... to disregard it unless we are of the opinion that it affected the "substantial rights" of the defendants.... What it really boils down to is that if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial.[10]

This Court has always reviewed trial errors for prejudice because "[i]t is almost

impossible for a criminal trial to be had in which some immaterial error does not occur during the proceedings. It would be an injudicious practice to reverse judgments of conviction where the errors complained of could have in no way influenced the result of the trial."[11]

After examining the record in this case, we find no substantial possibility that the jury's verdict would have been any different if the trial court had not erroneously excluded Michelle Agee's testimony. Specifically, Agee's testimony did not constitute substantially probative evidence on the issue of whether Appellant or Taylor was the initial aggressor. First, the jury heard from a number of eyewitnesses to the actual events leading up to Appellant's shooting of Taylor and thus had an opportunity to assess the credibility of those witnesses and to evaluate both Appellant's and Taylor's actual conduct. Second, the jury heard other evidence concerning Taylor's state of mind which was far more probative than the testimony offered by Agee. Doris Chaney, an employee at the BP station, testified that, *directly before the shooting,* Taylor said to Irvin, "Show me which one he is, and I will take care of him." By contrast, Agee's testimony involved a third-hand statement—which the alleged declarant denied even making—concerning statements attributed generally to both Irvin and Taylor. As the excluded evidence was largely cumulative, and the jury heard testimony concerning Taylor's threat made immediately prior to the shootings, we find that, "although the rul-

ever, where continued ill feeling up to the time of the homicide is proven, as was true in this case, it is doubtful if the remoteness would even impair the credibility of such testimony, much less operate to render it incompetent.
*Id.* (citations omitted and emphasis added).

**8.** RCr 9.24.

**9.** Ky., 439 S.W.2d 949 (1969).

**10.** *Id.* at 952.

**11.** *Horton v. Commonwealth,* Ky., 240 S.W.2d 612, 614 (1951).

ing of the court was erroneous, it was not prejudicial."[12]

## ADMISSION OF PHOTOGRAPH OF VICTIM

■ Appellant's second claim is that the trial court erred by admitting a photograph of Taylor with his wife and three children. Appellant acknowledges case law allowing the admission of photographs of a deceased victim prior to death to portray the victim as a living person, provided that the photographs are not likely to induce undue sympathy or hostility.[13] Appellant argues, however, that this photograph, which included members of Taylor's family was clearly intended to portray Taylor as a "family man," not just a man with a family, and, as such, incapable of violence.

We hold that the trial court did not abuse its discretion to control the introduction of evidence when it allowed the Commonwealth to introduce this photograph. Appellant's concerns of prejudice are fanciful, and we note that, at trial, defense counsel made no objection when Patricia Taylor testified that she and Taylor had three children and provided their names and ages. Simply put, the photograph is "not shocking, sensational, likely to provoke anger, or likely to induce undue sympathy or hostility,"[14] and it was therefore admissible.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Madison Circuit Court.

GRAVES, JOHNSTONE and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., dissents by separate opinion with COOPER and STUMBO, JJ., joining that dissent.

LAMBERT, Chief Justice, Dissenting.

Respectfully, I dissent.

Despite acknowledgment in the majority opinion that the trial court erred when it excluded the testimony of Michelle Agee, the majority has nevertheless affirmed the conviction on grounds that exclusion of the testimony was harmless error. For the following reasons, I believe the majority is mistaken.

As shown in the majority opinion, Appellant was acquitted of the murder of Irvin, but was convicted of manslaughter for the shooting of Taylor. Appellant was also convicted of three counts of second degree wanton endangerment pertaining to three persons in a car that was struck by shotgun pellets.

Appellant claims that the trial court erred by excluding the testimony of Michelle Agee. The underlying facts leading to this claim of error are as follows. In its case in chief, the prosecution called Jennifer Baker as a witness and questioned her about a conversation she had had with Paul Rogers and Michelle Agee. During cross examination of Baker, defense counsel asked if, during that conversation, she

**12.** *Minix v. Commonwealth*, Ky., 249 S.W.2d 48, 51 (1952).

**13.** *See Eldred v. Commonwealth*, Ky., 906 S.W.2d 694, 704–5 (1994) ("There is no error in presenting evidence of a victim as a living person, as opposed to a mere statistic, provided the evidence is not shocking, sensational, likely to provoke anger, or likely to induce undue sympathy or hostility."); *McQueen v.*

*Commonwealth*, Ky., 669 S.W.2d 519, 523 (1984) ("It would, of course, behoove the appellant to be tried for the murder of a statistic, but we find no error in bringing to the attention of the jury that the victim was a living person . . . .").

**14.** *Eldred v. Commonwealth*, *supra* note 13 at 705.

had made a statement that Taylor and Irvin, in another conversation, had discussed "taking care of the Rogers boys." Baker denied having made such a statement. Defense counsel later called Agee as a witness, intending to elicit through her testimony that Baker had indeed told her that Taylor and Irvin had talked about killing Appellant and Paul Rogers. The Commonwealth objected, arguing that the statement was inadmissible hearsay. Following an offer of proof through avowal, the trial court excluded the testimony based upon KRE 801.

Appellant contends that the statement should have been admitted based upon several exceptions to the hearsay rule. He first points out that the statement was an example of hearsay within hearsay, or double hearsay, which is admissible if each part of the combined statement conforms to an exception to the hearsay rule.[1] Appellant maintains that Agee's statement constituted admissible double hearsay because each statement within it fell under an exception to the hearsay rule. The statement Agee attributed to Baker, Appellant argues, was a prior inconsistent statement of a witness and thus admissible pursuant to KRE 801A(a)(1). Taylor's and Irvin's remarks about killing the Rogers brothers, Appellant further argues, were admissible under the KRE 803(3) exception for statements regarding "then existing mental, emotional, or physical conditions (such as intent, plan, motive, design, mental feeling, pain, and bodily health)."

In response, the Commonwealth maintains that the threatening statements by Taylor and Irvin were not admissible be-cause they were made prior to the day of the shootings, in effect, at a time too far removed from the crimes to be relevant. This argument, however, must fail, as "It is well-settled that relevancy of expressions of state of mind can exist without a concurrence in point of time between the making of the statements and the states of mind required to be proved."[2] For example, in a murder case in which the defendant claimed self-defense, a statement made by the defendant two years prior to the murder regarding his desire to kill the victim was admitted for the inference that the same state of mind existed at a later date.[3] In the case at bar, the few weeks between the day of the crimes and the time the statement at issue was made were not so significant as to obviate its relevancy. Thus, it was error for the trial court to exclude this evidence as inadmissible hearsay, as each statement within this example of double hearsay satisfies an exception to the hearsay rule.[4]

Appellant contends that he was prejudiced by the exclusion of Agee's testimony because it would have shown that Taylor was not an innocent third party tragically caught up in the quarrel between Irvin and the Rogers brothers, but instead was involved with Irvin in the plan to kill the Rogers brothers. Agee's testimony would also help to explain Taylor's threatening statement made at the Waco BP, "Show him to me. I'll take care of him." As there were conflicting accounts of who the initial aggressor was, the exclusion of Agee's statement severely weakened his

1. KRE 805; *Thurman v. Commonwealth*, Ky., 975 S.W.2d 888 (1998).

2. *DeGrella ex rel. Parrent v. Elston*, Ky., 858 S.W.2d 698, 709 (1993)(*quoting* Robert G. Lawson, *The Kentucky Evidence Law Handbook*, 3rd Ed., § 8.50, p. 435 (1993)).

3. *Fleenor v. Commonwealth*, 255 Ky. 526, 75 S.W.2d 1 (1934).

4. RCr 9.24.

claim of self-defense with respect to Taylor.[5]

"Under the harmless error doctrine, if upon consideration of the whole case it does not appear that there is a substantial possibility that the result would have been any different, the error will be held non-prejudicial."[6] Clearly there is a substantial possibility that the result would have been different had Michelle Agee's testimony been admitted. As noted above, Appellant was convicted of first degree manslaughter of Taylor but not Irvin. Agee's testimony regarding what Baker had told her about Taylor and Irvin and their plan to "take care of the Rogers boys" would have detracted from Baker's credibility and supported Appellant's self defense claim especially with respect to Taylor. The majority admits that the evidence at trial supported both the Commonwealth's and Appellant's versions of the events and that some witnesses' testimony was contradictory. The result might very well have been different had Agee's testimony been admitted, aiding Appellant's theory of the case that he was merely protecting himself because Taylor was the first aggressor. By excluding this testimony the substantial rights of Appellant were affected because he was not able to fully present his self defense claim. Agee's testimony supplies a motive the jury could have believed for Taylor's alleged aggression against Appellant.

The majority also holds that the excluded testimony of Agee was cumulative and that the jury heard testimony of the threat made by Taylor shortly before the shootings, therefore the exclusion was not prejudicial. I disagree. A jury may believe the consistent testimony of two or three witnesses but may not believe only one witness's testimony. Here there was testimony of one witness that Taylor made a threat aimed at Rogers. Had there been another witness testifying to the same effect on a prior occasion, it would increase the likelihood that the jury would have believed it.

The majority holds that Agee's testimony was mainly cumulative and therefore not prejudicial. If a proposition is so compelling that no reasonable person could fail to believe it, the testimony would be cumulative and its exclusion not prejudicial. However, where, as here, the proposition is uncertain, additional evidence should be permitted to support that proposition. Such additional evidence should not be regarded as cumulative and its exclusion is prejudicial.

The excluded evidence, if believed by the jury, would have established that Taylor was a participant in a plan to "take care of the Rogers boys," which I interpret to mean infliction of harm upon them. If this evidence had been admitted as it should have been, the jury could well have reached a different conclusion with respect to the reasonableness of Appellant's belief in the need for self-protection against Taylor. My view in this regard is strengthened by the fact that Appellant was acquitted of having committed homicide against Irvin after the jury had heard evidence of his long-standing antagonism towards the Rogers brothers. It cannot be said with confidence that admission of the evidence that Taylor was a participant in the plan to harm the Rogers brothers would not have

---

**5.** *See Brock v. Commonwealth*, Ky., 947 S.W.2d 24, 29 (1997)(uncommunicated threat by deceased against defendant is admissible to show deceased's state of mind prior to the killing and as evidence to prove who was the aggressor).

**6.** *Gosser v. Commonwealth*, Ky., 31 S.W.3d 897 (2000) (*citing Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949, 952 (1969)).

led to a similar acquittal. Accordingly, Appellant should have a new trial with the excluded evidence being admitted.

COOPER and STUMBO, JJ., join this dissenting opinion.